The Bridgeport City Bank agt. The Empire Stone Dressing Co.

———————

## SUPREME COURT.

### The Bridgeport City Bank agt. The Empire Stone Dressing Company.

*A corporation* cannot become *accommodation indorsers* or *sureties* in any other form. (*See* 3 *Kern.* 309.)

If, however, such an indorsement is made by a corporation, and the note has been discounted in good faith, in consequence of representations made by its proper officers, that it was their own note; or if the note has passed into the hands of a *bona fide* holder without notice, who has paid a valuable consideration for it, the security will be held valid so as to protect the holder. Where there is conflicting evidence on these points, it is a proper case to be left to the jury.

*New York General Term, October*, 1859.

APPEAL from a judgment at special term, entered on a verdict for plaintiffs. The facts will appear in the opinion.

By the court, CLERKE, Justice. Whether a corporation can become sureties, either as accommodation indorsers, or in any other form, we supposed was beyond all question, firmly established in the negative. We had occasion to discuss and decide this question, little more than a year ago, at the general term of this district. The decision is reported in the 26*th Barbour*, 568, in the case of *Morford* agt. *The Farmers' Bank of Saratoga.* It is expressly stated in the opinion in that case, that a banking or other corpo-

ration is not authorized to make an accommodation indorsement; and it is not binding unless it appears that the note has been discounted in good faith by the party suing on it, in consequence of a representation made by the bank that it was its own note.   This, in fact, was only a reiteration of the opinion of the court of appeals, in the *Bank of Genesee* agt. *The Patchin Bank* (3 *Kern.*, 309). The language of the court in that opinion is: " It is quite clear that the officers of a banking association or other corporation, have no power to engage the institution as the surety of another.   Such a transaction is without the scope of the business of the company." And again: " But if the proper officers of the defendant have negotiated it to the plaintiff, representing it to be a bill belonging to their bank, and upon the faith of that representation the plaintiff has, in the usual course of its business, discounted it, advancing to the defendant the proceeds, the defendant is precluded upon the principle first referred to (the principle of estoppel), from setting up that it was indorsed without authority." The principle, indeed, is also recognized in that opinion, that a negotiable security of a corporation, which, upon its face appears to have been duly issued by the corporation, is valid in the hands of a *bona fide* holder without notice, although, in fact, it was issued for a purpose, and at a place, not authorized by the charter.

The decision of the court of appeals, in *The Farmers' and Mechanics' Bank* agt. *The Butchers' and Drovers' Bank* (16 *N. Y. R.*, 125), is not in conflict with these principles, but, on the contrary, is in complete accordance with them. The real question in that case was, whether the principal is estopped by the representation of the agent from disputing facts, which show that the act was not authorized. In that case the defendants' teller had certified that the drawer of a check had funds in their bank to pay the check.   While it was admitted that a principal is not

bound by an authorized act of the agent, it was held, that although the teller had no authority to certify without funds, there was a plain distinction between the terms of a power and facts entirely extraneous, upon which the right to exercise the authority conferred may depend. " One who deals with an agent has no right to confide in the representations of the agent as to the extent of his powers. If, therefore, a person knowing that the bank has no funds of the drawer, should take a certified check upon the representation of the cashier or other officers by whom the certificate was made, that he was authorized to certify without funds, the bank would not be liable." But in regard to the extrinsic fact, whether the bank had funds or not, it was held that the bank was estopped from denying the representations of its agent. The teller, *by certifying the check*, virtually declared the extrinsic fact, that the drawer had funds in the bank, and it was held that the bank was estopped from disputing this declaration. It is expressly held in that case, however, that if the holders of the check knew that the representations of the teller were false, they would not be deemed innocent holders; much less does it contradict the principle that a corporation cannot become surety, either as an accommodation indorser or in any other form, unless the note has been discounted in good faith, in consequence of representations made by its proper officers, that it was their own note, or unless it (the note of the corporation) has passed into the hands of a *bona fide* holder without notice, who has paid valuable consideration for it.

In the case under consideration, the main question, besides that relating to the notice of protest arising from the principle to which I have referred, was whether the indorsement on the note in suit was for the accommodation of a third party, or whether it was discounted by the plaintiffs for the benefit of the defendants; and secondly, if really an accommodation indorsement, was it discounted

by the plaintiffs in consequence of representations made by the proper officers of the defendants, that it was their own note, received by them in the ordinary course of business. There was conflicting evidence on these points, but the judge left nothing for the jury to decide, he himself deciding that the plaintiffs discounted the note, so as to become the *bona fide* holder, and directed the jury to find a verdict for the plaintiffs. This, without any consideration of the other points presented on the argument, is sufficient to induce us to set aside the verdict, and to order a new trial, costs to abide the event.