Humphrey v. The Patrons' Mercantile Association.

District Court, with directions to enter a decree in accordance with this opinion.

REVERSED.

---

HUMPHREY v. THE PATRONS' MERCANTILE ASSOCIATION.

1. **Corporation: AMENDMENT OF ARTICLES: RECORDING OF.** Where a corporation has assumed to make a contract authorized by its amended articles, and has received the consideration therefor, it cannot escape the obligation of the contract by setting up a want of record of the amended articles.

2. ———: **UNAUTHORIZED INDEBTEDNESS.** Private corporations are responsib e at least to the extent of the consideration received for indebtedness assumed to be contracted in excess of the limit imposed by the articles of incorporation.

3. ———: **ACTS OF AGENTS· CONTRACT.** An acceptance by a corporation of the benefits of a contract, with knowledge of the fact that such contract, but for such acceptance, would not be binding upon it, will constitute an adoption of the contract, and render the corporation liable upon it.

*Appeal from Black Hawk District Court.*

THURSDAY, APRIL 24.

THE plaintiff avers that in March, 1874, he took charge and management of defendant's business, which consisted of a retail grocery store in Waterloo, Iowa; that there was then a large amount of indebtedness due and owing by defendant to various parties for goods purchased by it; that to pay off such indebtedness, at the request and by the direction of defendant, plaintiff borrowed for the use of defendant, and used in paying off such indebtedness, one thousand dollars, for which plaintiff agreed in writing to and did pay, by direction of defendant, ten per cent interest per annum, which money was borrowed June 10, 1874, as will more fully appear by reference to a copy of the note given by plaintiff therefor, which is attached as exhibit "A;" that plaintiff has paid said note in full; that there is now due him thereon (after allowing as

credit two hundred and forty-two dollars and forty-six cents) nine hundred and eighty-four dollars and fifty-four cents, with interest at ten per cent from September 20, 1876, and asking judgment accordingly.

The defendant, in its answer, "admits that plaintiff acted as its general agent, as alleged. Avers that plaintiff was at same time an officer of defendant, as well as its general agent; that at the time of the alleged loan in question, and of the payment of the proceeds thereof for the use of defendant, said defendant, its officers and agents were not authorized to borrow money on its account, but were expressly prohibited therefrom by one of its articles of incorporation, which was in words and figures as follows:  'Article 4. The business of this association shall be conducted on a cash basis.'  And defendant avers that in making said loan plaintiff acted without authority.  Denies that defendant or its board of directors authorized plaintiff to borrow said money, and denies that said board had authority to authorize said loan.  As to whether plaintiff made the loan and applied the proceeds as stated in his petition, defendant has not knowledge sufficient to form a belief."

Other facts are stated in the opinion.  There was a trial by jury and verdict for the plaintiff.  Defendant appeals.

*Boies & Couch*, for appellant.

*Miller & Preston*, for appellee.

ROTHROCK, J.—I.  At the June Term, 1878, of this court an opinion was filed in this cause reversing the judgment of the court below.  A petition for rehearing was filed within the proper time, upon an examination of which a rehearing was ordered, a reargument was had, and the cause has again been submitted for our consideration.

Upon a careful re-examination of the original abstracts and arguments, in connection with the arguments upon re-

Humphrey v. The Patrons' Mercantile Association.

hearing, we have arrived at a conclusion different from that announced in the former opinion.

II. It is urged by appellant that it had no power to incur any liability to the plaintiff. Its want of power is based

1. CORPORA-TIONS: amendment of articles: recording of.

upon the fact that the articles of incorporation provided that the business of the company should be conducted upon a cash basis. But it appears that after the adoption of the articles, and upon the same day, amended articles were adopted, which allowed the company to borrow money to the extent of two thousand dollars; that the article originally adopted requiring the company to conduct its business upon a cash basis was omitted in the amended articles, and the power of the company to incur indebtedness was limited to two thousand dollars. It does not clearly appear whether notice of the amended articles was published, but no question of that kind is presented in this court, and none appears to have been raised in the court below. The amended articles were recorded, but not until after the transaction in question. It is urged, therefore, by the appellant, that they were not in force at the time of the transaction in question. In support of this view our attention is called to section 1065 of the Code, which provides that no change shall be made in the articles of incorporation "unless recorded as the original articles are required to be." But it appears to us that this provision was made for the protection of those with whom the corporation might deal. Such persons might, doubtless, in a proper case, set up the fact that the amended articles were not recorded. But, where the corporation has assumed to make a contract authorized by the amended articles, and has received the consideration, we do not think it can be allowed to escape the obligation of the contract by setting up a want of record of the amended articles. This principle was substantially decided in *Grape Sugar & Vinegar Mfg. Co. v. Small*, 40 Md., 395.

III. Another objection urged by the appellant to the

plaintiff's recovery may be stated as follows: The amended
articles, as we have seen, provide that the com-
pany's indebtedness shall be limited to two thou-
sand dollars. The fact, however, is that at the time of the
transaction in question the company had purchased goods on
credit to the amount of three thousand dollars, and they had
not been paid for. Now it is contended that, if the company
had the power to incur indebtedness for goods, it had already
incurred as much indebtedness as was authorized, and could
not incur any more. Upon this point it is sufficient for us to
say that there was evidence tending to show that plaintiff,
who was the managing agent of the defendant, used at least
a part of the money for which recovery is sought, in paying
for the goods which had been purchased on credit. Now, if
the defendant's liability arose from the mere fact that it had
the use and benefit of the plaintiff's money in the payment
of previous indebtedness, which seems to be one theory of
the plaintiff, then the same act which created an indebted-
ness to the plaintiff extinguished a like amount of indebted-
ness to some one else, and the indebtedness was not increased.
But it is contended that, of the three thousand dollars indebt-
edness previously existing, at least one thousand dollars of it
was illegitimate, and that it does not appear that the money
in question was used in paying only that which was legitimate.

In our opinion, however, the limit imposed by the amended
articles upon the company's power to contract indebtedness
would not necessarily have the effect to exempt the company
from liability for indebtedness assumed to be contracted in
excess of the limit. It has been held, it is true, that a mu-
nicipal corporation is not liable for indebtedness assumed to
be contracted in excess of the limit fixed by the constitution.
*Carter v. City of Dubuque*, 35 Iowa, 416. But we know of no
case where a private corporation has not been held, at least
to the extent of the consideration received, for indebtedness
assumed to be contracted in excess of the limit imposed by
the articles of incorporation. There is good reason for mak-

2. ———: un-
authorized
indebtedness.

ing a distinction between municipal and private corporations in this respect. The creditor of a municipal corporation may, far more properly than the creditor of a private corporation, be required to take notice at his peril as to when the limit is reached.·

If a municipal corporation has occasion to contract indebtedness, other than by way of current expenses to be met by current revenue (see *Grant v. City of Davenport*, 36 Iowa, 396), it is something exceptional. It is not only a matter of local public interest, but a matter of local public notoriety· Besides, the indebtedness must be contracted through prescribed formalities, and the action of the municipal officers should be made, and, it may be presumed, ordinarily is made, a matter of public record. A private corporation incurs indebtedness daily, and that, too, which is not to be offset by prospective current income, but which helps swell the indebtedness to which the limitation applies. It incurs the indebtedness in the transaction of its ordinary business, and through its various agents. No specific formal action of its directors in advance would ordinarily be practicable. Its records, therefore, so far as they may be presumed to be accessible to creditors, would not ordinarily show, even if well kept, more than an approximation at a given time to the corporate indebtedness; nor has it any officer charged by law with the duty of keeping a record of the indebtedness, or of any action through which the indebtedness was contracted. Unless, therefore, the corporation is estopped from setting up the limit where the consideration has been received, it would properly be without credit, the very thing for which private corporations largely are organized. This result is to be avoided, if it can be consistently with the protection which the limitation is designed to afford to stockholders, and we think it can be. The stockholders must be regarded as at least partially protected by the receipt of consideration, and if not fully so in every case, they may doubtless have an action (or the corporation may, which

represents their interest), against the officers or agents who, without authority, have imposed upon them a liability which has resulted in their loss.

In this connection it is proper that we should say, for the purpose of guarding our decision, that if the defendant's indebtedness for goods had been contracted before the amended articles had been adopted, and while the article was in force providing that the business of the company should be conducted upon a cash basis, a different question would be presented.

That such indebtedness would be invalid there would be far more reason to contend, because the presumption would be that the creditors knew that the defendant was not authorized to do business upon credit. Whether indebtedness in such a case should be held invalid there appears to be some conflict of authority, and we are not called upon to determine it. By the amended articles the prohibition was removed. The limit of indebtedness was fixed at two thousand dollars. Within that limit it was authorized to do business upon credit, and although the limit, as appears, was exceeded, yet we are of the opinion, in view of the importance of upholding corporate credit and protecting creditors who have parted with their property in ignorance of the fact that the limit had been exceeded, that the corporation should be estopped from setting up such fact. We conclude, then, that the defendant was liable for the goods bought; and the money advanced by the plaintiff, so far as it was used in paying for the goods, was used in paying obligations which the defendant could not have escaped.

It is contended, however, that even if this is so the plaintiff should not recover, because it appears that he was a guilty agent who contracted the excessive indebtedness. But we do not think that the defendant can complain of the plaintiff's unauthorized acts unless it was damaged, and no claim of that kind is made.

IV. The foregoing is a copy of part of the opinion here-

tofore filed, as prepared by Mr. Justice Adams, and concurred in by all the members of the court. We still adhere to the view therein expressed. The judgment was reversed by reason of what we then considered an erroneous instruction given by the court to the jury. The instruction is in these words:

3. ——: acts of agent: contract.

"4. In this country it is now settled that all duties imposed on corporations aggregate by law, and all benefits conferred at their request, raise implied promises, for the enforcement of which an action may well lie. Hence, if you shall find from the evidence that the directory, while they were assembled together as such, did not contract with the plaintiff, as claimed, but that they had adjourned to the bank to give their individual notes to it for the debts of the defendant; and while on their way plaintiff suggested to them that he could raise for the defendant the one thousand dollars he claims to have advanced, and they consented thereto; yet, inasmuch as the whole benefit of the contract resulted to the corporation, and it has been known by it and accepted by it, then you may legally infer an adoption of the contract, and such an acceptance as would make the defendant liable herein for the sum so advanced or borrowed by plaintiff for the use of defendant in paying its debts, if you find from the evidence the corporation used the money knowingly, and accepted said sum with such knowledge. Promises may as well be implied from the acts of the agents of a corporation as if it had been an individual."

The ground upon which it was held in the former opinion that the foregoing instruction was erroneous was that no contract of any kind is averred in the petition, except that which is expressed in the promissory note given by the plaintiff to the party of whom he borrowed the one thousand dollars; and that plaintiff claims what is due him is due him on the note, and as the note calls for ten per cent interest, there was no evidence that any of the directors authorized the plaintiff to borrow money at that rate of interest.

We now think there are two grounds upon which this instruction should have been approved: *First*, it was not urged in argument by appellant that the instruction was not pertinent to the issue presented in the pleadings; and, *second*, it was a mistake to say that the plaintiff sought to recover on the note. The defendant was not a party to the note, and of course there could be no recovery against it upon the note. But an examination of the petition and answer, copies of which are set out in the statement of facts preceding this opinion, shows that plaintiff brought the action upon a contract with the defendant, authorizing him to borrow money for its use. The note having been paid, is merely set out as showing the amount. It does not appear from the pleading whether this contract was in writing or by parol. The evidence shows that whatever there was in the way of a contract was by parol.

It appears from the evidence that a meeting of all of the directors of the defendant was held on the day the plaintiff gave his note to the bank for the one thousand dollars. As to this meeting the plaintiff testifies:

"I told them (the directors) I would become responsible for one thousand dollars, if they would take six hundred dollars. They said they would do it, and so we went over to the bank. Farmington, Carpenter, Farnsworth, Gardner, Washburn, (directors) and myself went over. Mr. Leavitt (the banker) said if we wanted money we must give our personal notes. He let us have the money and took our notes there and then. I said to Leavitt that I was to become responsible for one thousand dollars for the use of the company, and the others would be responsible for six hundred dolllars. Both notes were executed in the presence of us all. * * * * * * I checked out the one thousand six hundred dollars borrowed in payments of debts of defendant in three days after it was borrowed. I paid its indebtedness as far as their funds would go."

All the evidence tends to show that this meeting of the directors was called for the very purpose of devising some

means to relieve the defendant from pressing obligations. The one thousand six hundred dollars raised upon the two notes was the result of the deliberations of that meeting.

Now we do not understand from the testimony of the directors, who gave their note for six hundred dollars, that they were ignorant of the fact that the plaintiff also gave his note for one thousand dollars. That he was to raise one thousand dollars to relieve the defendant of its debts seems to be conceded. No one claims that this was to be a gift to the defendant. It appears to us that there was sufficient in the evidence to warrant the court in not only instructing the jury that they might infer an adoption of the contract from the acts of the parties, as set out in the instruction, but that such act constituted an express contract, authorizing the plaintiff to borrow money to pay defendant's debts, and for which defendant was liable. The statement to the jury that a contract might be inferred, if certain facts were found to be established by the evidence, when such facts amounted to a contract, was not error prejudicial to the defendant.

The fact that plaintiff in his petition claims ten per cent interest does not affect the contract or obligation to pay the one thousand dollars. The contract between the plaintiff and defendant not being in writing, the legal rate of interest would be six per cent per annum. Code, § 2077. But the plaintiff, in his petition, claimed ten per cent. The defendant, in its answer, did not specially aver that the interest claimed was unauthorized.

The court, in its sixth instruction to the jury, directed that, if plaintiff was entitled to recover, interest should be computed at ten per cent. No exception was taken to this instruction, and no assignment of error is made thereon. Under these circumstances we must affirm the judgment as it stands. The plaintiff asks that judgment be rendered in this court against the sureties in the *supersedeas*. This is uniformly done, when asked in proper time, and judgment will be so entered.

AFFIRMED.