LUCAS, CASHIER, ETC., v. THE WHITE LINE TRANSFER CO.

1. **Corporations:** TRANSFER COMPANY: CONTRACT OF SURETYSHIP: ULTRA VIRES: ESTOPPEL. Defendant is a corporation organized for the purpose of engaging in the "general freight and transfer business." By its secretary, it joined the plaintiff in executing a bond of suretyship for L. & M. to the B. company. Afterwards L. & M. failed, but they executed their note to plaintiff and defendant for the amount of the bond, in consideration of the payees' assuming that amount of their indebtedness to the B. company. Thereupon the defendant, by its president, joined plaintiff in a letter to the B. company, assuming liability for the indebtedness of L. & M. to that amount. It also, by its officers and attorneys, joined plaintiff in an action on said note against L. & M., which was aided by attachment. Defendant refused to pay to the B. company any portion of the indebtedness thus assumed, and plaintiff

paid the whole of it, and now seeks to recover contribution from defendant as a co-surety. *Held* that defendant's original contract of suretyship was *ultra vires*, as was also its assumption of indebtedness by the letter signed by its president, and that the other acts of defendant's officers did not estop it from insisting on that fact as a defense, and that no recovery could be had. (See opinion for a series of legal propositions in relation to *ultra vires* contracts, by ROTHROCK, J.)

*Appeal from Polk Circuit Court.*

THURSDAY, DECEMBER 23.

ACTION by plaintiff to recover contribution as co-surety on a bond. Defendant answered. Plaintiff demurred to the answer. The demurrer was sustained, and the defendant appeals. Facts necessary to an understanding of the case appear in the opinion.

*Cummins & Wright*, for appellant.

*Goode & Phillips*, for appellee.

ROTHROCK, J.—I. The petition shows that the Valley National Bank and White Line Transfer Company are corporations organized under the laws of Iowa; that, for the purpose of securing to the Philip Best Brewing Company payment for such beer as Leach & McCullum should purchase of said brewing company, said bank by its cashier and said transfer company by its secretary, J. O. Perrin, became sureties for said Leach & McCullum in a bond for $1,500 made to said· brewing company as obligees; that subsequently the said Leach & McCullum failed in business, and refused to pay their indebtedness to the brewing company, and on May 27, 1884, executed their note to the said bank and transfer company, payable on demand, and in consideration of the payees there in assuming to pay $1,500 to said brewing company; that on May 28, 1884, the following letter was directed to and accepted by the brewing company:

"*Philip Best Brewing Company, Milwaukee, Wisconsin*—DEAR SIR: By an arrangement with Leach & McCullum, and in view of the fact that we were sureties to you for them, we have assumed fifteen hundred dollars (the measure of our obligations as sureties) of their indebtedness to you.

"Very respectfully, etc.,    W. D. LUCAS, Cashier.

"WHITE LINE TRANSFER CO.,

"P. J. MILLS, President."

—That on the thirtieth day of September, 1884, the brewing company made demand for the sum of $1,500, and interest, and plaintiff, after requesting the transfer company to pay its half thereof, and its refusing to do so, paid to said brewing company, "on said suretyship," the sum of $1,572.51; that on the twenty-eighth of May, 1884, suit in attachment was brought in the name of plaintiff and defendant, and against Leach & McCullum, on the said note, dated May 27, 1884, and judgment recovered thereon; that the amount paid to the brewing company exceeds the amount realized from the attachment proceedings by the sum of $1,267.79; that the interest thereon is $35.56, making a total of $1,303.35; that general execution was issued in the judgment against Leach & McCullum, and returned *nulla bona*. Wherefore the plaintiff claims that the transfer company, as co-surety in said bond, should contribute one-half the last-named sum, being $651.67 and asks judgment therefor.

The plaintiff attached to the petition a copy of the bond to the brewing company, signed by the firm and individual names of Leach & McCullum, and also signed: "W. D. LUCAS, Cashier. WHITE LINE TRANFSER CO., J. O. PERRIN, Secy." There are also attached copies of attachment, and indemnifying bonds given in the attachment proceedings, signed by Lucas, cashier, and the transfer company, as above, and also copies of pleadings and stipulations in said attachment proceedings, signed by attorneys purporting to act for both the bank and the transfer company, who were joined as plaintiffs in said attachment proceedings.

The White Line Transfer Company, defendant, filed an answer, stating, in substance, that the sole object of its organization was to engage in the "general freight and transfer business;" that it had no power or authority to become surety for the debt of another; that the secretary of said company, in signing the name of the defendant to the bond given to the brewing company, and the president of the company, in signing the name of defendant to the letter of May 28, 1884, did so without authority from the directors or stockholders of the defendant, and without the knowledge, on the part of many of them, that such signatures had been or were to be made; that the note executed by Leach & Mc-Cullum, dated May 27, 1884, payable to plaintiff and defendant, was so taken by plaintiff without any knowledge on the part of defendant's officers or stockholders until some time after said note was in the possession of the plaintiff; and that the attachment suit and proceedings based on said note were commenced and carried on without the knowledge of a large number of defendant's stock holders, who held a large share of the stock. The answer further states that the company never received, directly or indirectly, anything for signing said bond or letter, or on account of said attachment proceedings; that neither itself nor its officers had any authority to sign the contracts, or do the acts alleged in plaintiff's petition; and that said contracts were and are *ultra vires*. To the answer was attached a copy of defendant's articles of incorporation, in which appears the following article: "(3) *Object*. Said corporation shall have power to engage in the general freight and transfer business, and such other business as may not be inconsistent therewith."

To this answer the plaintiff filed a demurrer, on the grounds that, by reason of the matters set out in the petition, and exhibits thereto, and by reason of the taking of said note in favor of plaintiff and defendant, and the proceedings therein, as set forth, defendant was estopped from setting up the plea of *ultra vires;* and that the fact that

some of the stockholders did not know of the proceedings would not relieve the defendant from liability.

P. J. Mills and J. O. Perrin being made parties defendant, each demurred to the petition on the ground that, on the face of the petition itself, it appeared that they had not signed any of the obligations as individuals, and that the petition itself made no personal claim against them.

The court below sustained the demurrer to the answer, and rendered judgment in favor of plaintiff, on default for want of answer, for the sum of $628.02, and interest. From this ruling and judgment the defendant appeals. The court also sustained the demurrers of J. O. Perrin and P. J. Mills, and from this ruling the plaintiff appeals.

As to the last ruling, we think the circuit court should be sustained, as the petition does not state, nor attempt to state, a cause of action against Perrin and Mills as individuals.

II. The principal question involved in the appeal is the ruling on the demurrer interposed by plaintiff against defendant's answer. It is true, the demurrer seems to be based on the idea solely that, by the conduct of the defendant subsequent to signing the original bond, it has estopped itself from setting up the plea of want of power or authority to sign the bond. The two following propositions are proper to be considered: (1) Had the officers of the defendant power to bind the corporation by placing its name on the bond in question? (2) If they had no such power, has the corporation, or its officers, so acted in relation thereto subsequently, as to prevent or estop the corporation from now setting up the plea of want of power?

The corporation defendant is acting under the general incorporation laws of the state, and from the provisions of its articles and the statute it derives its power. A corporation exists and exercises its franchise only by virtue of a grant from the legislative power. The granting and acceptance of a charter in the case of private corporations for pecuniary profit are based on the theory that the prosecution of the

business proposed will be a benefit to the public, and that the investment of capital therein will result in pecuniary profit to the stockholders, and that it is an undertaking, on the part of the corporation and all of its stockholders, that, in consideration of the grant of power, the capital shall be used for the prosecution of the purpose named in the charter, and no other. There is also an undertaking on the part of the corporation with each stockholder that the capital he invests shall be put to no other use, and subject to no other hazard, than that contemplated by the powers expressed in the charter, and that those things which are within the scope or object of the corporation shall be done in the manner pointed out in the charter and the laws governing its action. But corporations and their officers do not always keep within their powers, and the application of the doctrine of *ultra vires* is often attended with very perplexing questions. By the application of a few plain rules, however, we may readily reach the proper answer to the question involved in the case.

(1) Every person dealing with a corporation is charged with knowledge of its powers as set out in its recorded articles of incorporation.

(2) Where a corporation exercises powers not given by its charter, it violates the law of its organization, and may be proceeded against by the state, through its attorney-general, as provided by the statute, and the unanimous consent of all the stockholders cannot make illegal acts valid. The state has the right to interfere in such case.

(3) Where a third party makes with the officers of a corporation an illegal contract beyond the powers of the corporation, as shown by its charter, such third party cannot recover, because he acts with knowledge that the officers have exceeded their power, and between him and the corporation or its stockholders no amount of ratification by those authorized to make the contract will make it valid.

(4) Where the officers of a corporation make a contract

with third parties in regard to matters apparently within their corporate powers, but which, upon the proof of extrinsic facts, (of which such parties had no notice,) lie beyond their powers, the corporation must be held, unless it may avoid liability by taking timely steps to prevent loss or damage to such third parties; for in such cases the third party is innocent, and the corporation or stockholders less innocent for having selected officers not worthy of the trust reposed in them.

(5) This class of cases may be illustrated by that where the officer of a corporation, empowered to build and operate a certain line of railroad, purchased iron to be used for another line, without the knowledge of the vendee. So, in case of *Humphrey v. Patrons' Mercantile Ass'n,* 50 Iowa, 607, the debts of the corporation were, by its articles, limited to a certain amount; but the officers of the association, in dealing with Humphreys, exceeded that amount without his knowledge, or means of knowledge, and the corporation was held. *Thompson v. Lambert,* 44 Iowa, 239, belongs to the same class of cases, with the addition that, in the last case, the stockholders, who objected to what they termed an *ultra vires* contract, were charged with knowledge of and participation in the act they claimed to be illegal, and were in no situation to complain. A corporation cannot retain benefits derived from an *ultra vires* contract, and at the same time treat the contract as entirely void, unless, perhaps, in cases where the other party has assisted willfully in putting it beyond the power of the corporation to return what is received on such contract.

(6) Where the corporation has permitted its officers to engage in *ultra vires* transactions, and, in the prosecution of such transactions, the officers commit a wrong or tortious act without the fault of the injured party, the corporation is estopped from taking advantage of the *ultra vires* character of the original undertaking.

These rules do not cover all cases, but are sufficient to guide us in the determination of the question in this case.

The case of *Bissell v. Michigan Southern & N. I. R. Co.*, 22 N. Y., 258, is relied upon by appellee as authority for holding corporations on *ultra vires* contracts. It is tru that the opinion of COMSTOCK, J., in that case, appears not to be in accord with the well-established doctrine of *ultra vires* as applied to corporations; but he says, (page 275:) " I do not deny the validity of this excuse in many cases,—I may say in all cases where it can be received without doing great injustice to others. If the person dealing with a corporation knows of the wrong done or contemplated, and he cannot show the acquiescence of the shareholder, he ought not to complain if he cannot enforce the contract. Aside from the law of corporations, agreements which involve or propose a violation of trust will not be enforced by the courts where no greater equities demand it." In that case the defendants had constructed a railroad not authorized by their charter, and for some years had been operating the same, and made a contract to carry plaintiff over the road. He was injured in a collision occasioned by the negligence of defendants' employes. The plaintiff's cause of action did not arise out of the *ultra vires* contract to carry him, but out of the wrong done on the way, and to which wrong he was not a contributing party. This view is consistent with the sixth proposition above, and is the one in which SHELDON, J., sustained the right of recovery in a very able opinion in the same case, and certainly in line with well-established authorities, and in support of the doctrine of *ultra vires*. None of the other judges sustained the views of COMSTOCK, J.; but all, except DENIO, J., sustained the right of recovery. A different question would have been presented in that case if the plaintiff had sued to recover for failure of defendants to transport him according to agreement.

In the case now before us the plaintiff seeks to recover contribution from the corporation as co-surety on the bond

to the brewing company, and claims (1) that the contract of suretyship was within the defendant's corporate powers; and (2) that, if it were not within defendant's corporate powers, it has so acted on the contract as to now estop it from pleading *ultra vires.* It is claimed that the language of the articles of incorporation, defining its business to be "the general freight and transfer business, and such other business as may not be inconsistent therewith," is of such a general character as to cover almost any kind of business. This position, it seems to us, is not tenable; for the language itself implies that there may be business inconsistent with the general freight and transfer business. The name of the corporation indicated its principal business, and the language is equivalent to saying it may do such other business as is consistent with the freight and transfer business. "Consistent" means standing together, or in agreement with. If the capital of the company is diverted into some other line of business entirely foreign to the freight and transfer business, it would be to the detriment of, and therefore not consistent with, the latter. But, whatever meaning may be attached to the language of the articles, it is quite certain it cannot include the contract of suretyship in question. The simple act of going security for another is out of the line of the prosecution of any business. It is a mere accommodation, and it cannot be assumed that the articles gave the officers of defendant any power to jeopardize its capital in any such venture.

"It is no part of the ordinary business of commercial corporations, and, *a fortiori*, still less so of non-commercial coporations, to become surety for others. Under ordinary circumstances, without positive authority in this behalf in the grant of corporate power, all engagements of this description are *ultra vires*, whether in the indirect form of going on accommodation bills, or otherwise becoming liable for the debts of others. Green's Brice, Ultra Vires, 252; *Madison etc., Plank-Road Co. v. Watertown etc., Plank-Road Co.,* 7 Wis., 59.

It seems to us clear that the corporation defendant had no power to make the contract of suretyship in question; and, for the same reasons, it is just as clear that the officers of the corporation had no power to sign the letter of May 27th, purporting to assume the payment of the amount stipulated in the bond. Both instruments, so far as the defendant was concerned, were illegal and void, and no attempted ratification by parties having no power to make the original contract could make it valid, no matter how often such attempts were made. It is questionable, on the authorities, whether even the consent of all the stockholders could make the contract valid, when it was so plainly beyond the powers granted by their corporation, which was, in duty to the legislative authority, held to apply its capital to the prosecution of the business for which it was organized and for which it received the grant of power. But this we need not determine. It is very clear, however, on authority and on principle, that there could not be a ratification without the consent of all the stockholders.

It appears from the record that the note sued on in attachment proceedings, and the proceedings themselves, were taken and carried through without the knowledge or assent of the stockholders or directors, and that the corporation defendant received no benefit therefrom; for whatever was realized therein was applied on the contract of suretyship, which was void as against the defendant, and was so applied by plaintiff or other unauthorized parties. *Tracy v. Guthrie Co. Agr'l Soc.*, 47 Iowa, 27.

It is further claimed that the corporation defendant, by its signature to the bond and letter, induced the plaintiff to become liable on the bond and letter also, and induced plaintiff also to pay the amount of the bond. It is stated, however, in the petition, that the defendant refused to pay its half, and it must be borne in mind, in view of what has preceded, that the brewing company and plaintiff were all the while, at and after the time of signing the bond, charged

with notice that the officers of defendant were not authorized to bind the defendant, and that attempts to do so on their part were illegal and void; and in this respect defendant's stockholders are innocent parties, while the plaintiff is not.

We are therefore of the opinion that the circuit court erred in sustaining the demurrer to the answer of the transfer company, and its ruling thereon is reversed, and the cause remanded. REVERSED.