### GASTON & AYRES v. J. I. CAMPBELL COMPANY.

No. 2196.   Decided November 15, December 20, 1911.

**1.—Corporation—Note—Ultra Vires—Innocent Purchaser—Notice—Case Stated.**

A corporation, the J. I. C. Company, created for the manufacture of lumber and purchase and sale of merchandise used in such business, being indebted in the sum of $6500 and pressed for payment, applied to J. to obtain a loan to meet it. J. procured the execution of a note payable to a third party, by the vice-president and active manager of the corporation personally, for $12,500, with indorsement by the corporation acting through such vice-president guaranteeing its payment, and negotiated a sale of this note to G. &. A. applying $6500 of the proceeds to discharge of the corporate indebtedness above mentioned. The balance of the proceeds of the note was left in the hands of J. subject to future arrangement as to its disposition. G. & A. had no notice of the nature of the transaction or consideration for which the note was given except such as might be drawn from the face of the note. A receiver was appointed for the property of the corporation, and G. & A. intervened in the receivership proceedings by suit upon the note.  Held:

(1)   The corporation had power to execute a note to obtain funds to discharge its indebtedness or conduct its business (Rev. Stats., arts. 651, 653) and equally the power, for like purposes, to guaranty the payment of a note executed by another.

(2)   The guaranty by the corporation of the note in an amount in excess of what it actually received and applied to its corporate purposes was not ultra vires, but merely an excessive use of its lawful powers.

(3)   The corporation could not defend on the ground that the consideration was partly for the benefit of another, and its guaranty thereof ultra vires to that extent, without returning the part of the consideration of which it had the benefit in its legitimate business.

(4) The form of the note and guaranty did not tax the purchaser with notice that the transaction was wholly or in part ultra vires and invalid as a contract by the corporation.

(5) The corporation was the real party in the execution of the note; the form given the transaction was immaterial; its effect was the same as though the company had executed the note instead of merely indorsing it.

(6) The rights of the innocent purchasers of the note could not be affected by the fact that the consideration went in part to the extinguishment of a previous debt of the maker or guarantor; nor by the subsequent disposition made of proceeds of the note, nor by any subsequent entries on the books of the company relating thereto. (Pp. 579-584.)

ON MOTION FOR REHEARING.

**2.—Receiver—Insolvency—Note—Interest.**

If a corporation whose property has been placed in the hands of a receiver be solvent, the judgment on its promissory note sued upon by an intervener should include interest to the date of the judgment. If it be insolvent, the recovery should be of interest to the date of the institution of the receivership proceedings. (P. 585.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Harris County.

Gaston & Ayres intervened in the receivership of the property of the J. I. Campbell Co., and had judgment for a part of their claim only, which was affirmed on their appeal. Thereupon they obtained writ of error.

*Hogg, Gill & Jones* and *Etheridge & McCormick,* for plaintiffs in error.—The endorsement of the J. I. Campbell Company was apparently made in the prosecution of its legitimate business, and as the result of such endorsement the J. I. Campbell Company received and has retained a substantial consideration, to wit, the sum of $6,500, paid to the banking firm of T. W. House, for its use and benefit, as well as the legally implied obligation of Jesse H. Jones to reimburse it for the remaining $6,000, and the proof further showing that plaintiffs in error were innocent purchasers of said paper, before maturity, in the due course and for full value, they were, as matter of law, under the undisputed facts of the case, entitled to judgment for the entire amount sued for by them. Petri v. National Bank, 83 Texas, 427; Railway Co. v. Gentry, 69 Texas, 632, 633; Lyon & Potter Co. v. First National Bank, 85 Fed., 120; Park Hotel Co. v. Fourth National Bank, 86 Fed., 742; Sioux City Ry. Co. v. Trust Co., 82 Fed., 124; Monument National Bank v. Globe Works, 101 Mass., 57; Lafayette Bank v. Stoneware Co., 2 Mo. App., 299; Bridgeport Bank v. Empire Dressing Co., 30 Barb., 421; National Bank v. Young, 7 Atl., 488; Goodman v. Simonds, 20 How., 343; Ex parte Estabrook, Federal Cases, No. 4534.

The J. I. Campbell Company, as the result of its endorsement upon the note sued upon, received and retained the sum of $6,500, and refused to restore the same, and it is, therefore, estopped, as against plaintiffs in error, who are innocent takers of the paper, before maturity, for value, to assert that I. L. Campbell did not, as vice-president of the corporation, possess the authority to endorse the guaranty of the corporation upon the note sued upon. Same authorities.

*E. P. & Otis K. Hamblin* and *Spotts & Matthews,* for defendant in error.—The J. I. Campbell Company was, under its charter, without power to guaranty the payment of notes of other companies or persons, and its guaranty of the note described in the interveners' petition was void in the hands of interveners; if they were entitled to recover anything on their intervention, they were only entitled to recover such part, if any, of the money for which the note was executed as was received by the said J. I. Campbell Company. Northside Ry. Co. v. Worthington, 88 Texas, 502; Franco-Texas Land Co. v. McCormick, 85 Texas, 421; Deaton Grocery Co. v. International Harvester Co. of America, 47 Texas Civ. App., 267; Park Hotel Co. v. Fourth National Bank of St. Louis, 86 Fed., 742; Green's Brice's Ultra Vires, 88; 10 Cyc., 799, 1109, 1116; Wilson v. Metropolitan Elevated Ry. Co., 120 N. Y., 145, 17 Am. St., 625; Rogers v. Jewell Belting Co., 184 Ill., 574; M. V. Monarch Co. v. Farmers, etc., Bank (Ky.), 88 Am. St., 310; Morawetz on Corporations, 606; Thompson on Corporations, sec. 5721; 1 Cook on Corporations, sec. 293; Greene v. Middlesborough, 89 S. W., 228 (Ky.); Humboldt Min. Co. v. American Mfg. Co., 62 Fed., 356; Rev. Stats., art. 665; California National Bank v. Kenedy, 167 U. S., 362.

The note described in the petition in intervention being that of I. L. Campbell, and having written thereon the following: "For value rec'd we guarantee the payment of the within note," and said guaranty being signed, "The J. I. Campbell Company, by I. L. Campbell, Vice-President," the plaintiffs in error were charged with notice of the fact that I. L. Campbell had, as vice-president thereof, placed the guaranty of said company on his own individual paper, and, therefore, they, plaintiffs in error, could not have been innocent purchasers of said note. Same authorities, especially: Wilson v. Metropolitan Elevated Ry. Co., 120 N. Y., 145, 17 Am. St., 625; Franco-Texas Land Co. v. McCormick, 85 Texas, 421; Park Hotel Co. v. Fourth National Bank of St. Louis, 86 Fed., 742; also 1 Cook on Corporations, sec. 293; Lyons, Potter & Co. v. First National Bank, 85 Fed., 120, cited by plaintiffs in error.

If the J. I. Campbell Company only received the sum of $6,500 of the amount for which the note sued on was executed, it is not estopped, as against the plaintiffs in error, from asserting that I. L. Campbell did not, as vice-president of said company, possess the authority to endorse its guaranty on said note, but is liable only for said sum of $6,500, if it received that sum. Authorities first cited.

The J. I. Campbell Company was, under its charter, without power to guaranty the payment of notes of other companies or persons, and the writing on the note described in the interveners' petition, signed in the name of said company by I. L. Campbell, its vice-president, purporting to guaranty the payment of his individual note, was void in the hands of interveners, who could, therefore, only recover such part, if any, of the moneys realized on said note as was received by said company, and the testimony showing that it received no part of said money, the interveners were not entitled to recover anything of the J. I. Campbell Company or of this defendant in error. Same authorities.

MR. JUSTICE RAMSEY delivered the opinion of the court.

The District Court for the Fifty-Fifth Judicial District appointed a receiver of all and singular the properties of the J. I. Campbell Company, a company which had theretofore been incorporated under the laws of this State. The plaintiffs in error, Gaston & Ayres, intervened in this receivership suit and sought to recover on a note for $12,500 dated at Houston, Texas, December 30, 1904, made by I. L. Campbell, payable to Ross L. Clark, due one year after date with interest from date at the rate of seven percent per annum. This note was negotiable in form. It bore the following endorsement: "For value received we guarantee the payment of the within note. J. I. Campbell Company, by I. L. Campbell, vice-president." The evidence shows that at the time of the execution of the note, the endorsement appearing thereon was entered by I. L. Campbell, the acting and active vice-president of the company, the president, Mr. J. I. Campbell, having theretofore died. The evidence also shows beyond question that at this time the company was in great financial straits and was being strongly pressed by the T. W. House bank for payment of a past due debt amounting to something like sixty-five hundred dollars. It was stated by Mr. I. L. Campbell that he "executed the note you hand me for the purpose of liquidating that indebtedness." The details of the transaction are thus stated by him:

"I, acting on behalf of the J. I. Campbell Company, did on or about December 30, 1904, apply to Mr. Jesse H. Jones for assistance in the matter of obtaining funds with which to pay T. W. House, and in that respect this is what occurred between myself and Mr. Jones: I went to Mr. Jones and told him Mr. House was desirous of having us pay what was due him and that I would like for him to help me get some money to pay Mr. House, and he said that he would do so, that he would see Mr. House, and would arrange it for me. Now, I do not know whether it was at the same time or the next time I saw him that he suggested I give him the amount due Mr. House, $6,500, I think, was the amount, and when I came to draw the note he, Jones, said to draw the note for $12,500, and I asked him why I should make it for $12,500, and he said he would fix the balance of it later; I said, all right, and executed the note myself, individually, he, Jones, asking me to make it to Ross L. Clark, and, of course, I being under obligations to him, made it as he suggested to Ross L. Clark; I did not know Mr. Clark in the matter at all. Then, at the time of delivering the note to him, Jones, he asked me to have the J. I. Campbell Company guarantee it, my note. I told him that I did not like to do that, that it was hardly business, and he, Jones, said that was all right, we could fix the balance of it later, and to just guarantee the note, which I did, writing the guarantee which appears on the back of this note (meaning the note in suit). I delivered then the note in suit to Jesse H. Jones. Do not think Ross L. Clark was there at the time. I do not personally know anything about the negotiations of this note to the interveners, Gaston & Ayres. Jesse H. Jones at the time I had the dealing with him just detailed paid to T. W. House the $6,500 which the J. I. Campbell Company owed him, the T. W. House bank, and such payment

was made by Mr. Jones by reason of the execution and delivery of this note to him (meaning the note in suit). As to what the understanding was about the remaining $6,000 of the note, why there was no understanding about it at that time, particularly, except that he said that he would take care of that later; there was no particular understanding with reference to that, but it was left to be arranged subsequently. I did not consider that $6,000 as a credit on a part of the Campbell Company in the hands of Jesse H. Jones. Jesse H. Jones at that time was solvent and financially responsible. As to whether or not I, acting on behalf of the J. I. Campbell Company at that time, had any trades pending with Jesse H. Jones, think they were all closed up prior to that time. Do not think there were any unfinished items of business between them. I relied on Mr. Jones' word about making future arrangements as to the $6,000 in executing the note for $12,500, and I had no hesitation in leaving the residue, $6,000, in his hands."

It was not denied or questioned that Gaston & Ayres acquired the note in the due course of trade and for value and that they acted in the utmost good faith and had no notice of any defect, infirmity or want of consideration in respect thereto, or that they had knowledge of any fact which would put them on inquiry as to any infirmity in the note, unless as a matter of law the note itself and the endorsement appearing thereon would visit them with such notice.

In the trial court a verdict in favor of Gaston & Ayres for $6,500 was instructed, and judgment for this sum was rendered in their favor. This judgment was on appeal to the Court of Civil Appeals by them affirmed and it is from this judgment that the case is brought to this court on writ of error.

The main proposition submitted in behalf of the plaintiffs in error, and which, if sustained, must dispose of the case is as follows:

"The undisputed evidence shows that plaintiffs in error purchased before maturity and paid full value for the paper sued on by them herein, without any reason whatever to suspect that same was not made in the due course of business by the corporation, J. I. Campbell Company, and as the result of the guaranty of the corporation upon the paper, it received and retained the full value thereof, and plaintiffs in error were, therefore, entitled to have judgment rendered in their favor for the full amount sued for by them, and the said Court of Civil Appeals erred in not so doing." We have no doubt that this proposition is, under the undisputed evidence, sound and that Gaston & Ayres are entitled to recover in said proceeding the full amount of their debt, and we do here and now so adjudge and decree.

In order that the grounds for so holding may distinctly appear, we will now set forth at some length the particular reasons which have led us to this conclusion. Negotiable papers in the shape of bills, notes, cheques and drafts evidence not only a large part of the wealth of the country, but furnish the means and basis on which and by which the greater part of the commerce and business of the nation is conducted. There passes through the banking houses of the coun-

try and through the mails every day of the year, in this form, a merchandise that far

"Outshines the wealth of Ormus and of Ind."

It has been truly said of them that they are "couriers without luggage." Not only by the law merchant of this country and England is negotiable paper favored and protected, but generally it is also protected by statute. So that it may be said to be the law of this State, settled so definitely as to be past discussion or controversy, that the purchaser of a negotiable note, in due course of trade, before maturity and for value and without notice of infirmities in it, or defenses against it, will be protected, and when suit is brought thereon will be entitled in the courts to recover on same. It is not, however, to be doubted that such a note may carry on its face such a danger signal that the purchaser may disregard same only at his peril. It may in many forms, in the language of Lord Denman, "bear its death wound on its face." We are therefore remitted to the task of assigning this note and our decision to the sound and settled rules of law, which under the facts, must govern and control. It was shown by the charter read in evidence that the J. I. Campbell Company was incorporated on February 17, 1904, with a capitalization of $500,000, with its principal office in the city of Houston, for the purpose of operating saw mills and planing mills, the manufacture of lumber, and of articles made of lumber, and the purchase and sale of such goods, wares and merchandise as are used in such business. It was shown that I. L. Campbell was the active vice-president of the company and the general and, indeed, the only manager of its business and affairs, conducting its business and executing its bills payable and that he was acting for and on behalf of the company in the matter in hand here. It is also undeniable that the company received directly the sum of $6,500 paid to the House bank. In this condition of the record it is insisted that since the company as the result of its endorsement upon the note sued on, received and retained the said sum of $6,500 and refused to restore same, it is and of right should be estopped, as against the plaintiffs in error, who are innocent purchasers of said note, before maturity and for value, to assert that I. L. Campbell did not, as vice-principal of said company, possess the authority to endorse the guaranty of the company on the note sued on.

Subdivision 7 of article 651, Revised Statutes, provides that every corporation, as such, has power "to enter into any obligation or contract essential to the transaction of its authorized business." Article 653, Revised Statutes, provides that "corporations shall have power to borrow money on the credit of the corporation, not exceeding its capital stock, and may execute bonds or promissory notes therefor, and may pledge the property and income of the corporation." Under this provision it has been held that such a corporation may lawfully mortgage its entire corporate property. Pumphrey v. Threadgill, 9 Texas Civ. App., 184.

It will thus be seen that the corporation in question had undoubted and express power to execute directly and in its own name a note for funds needed either to discharge its indebtedness or for the con-

duct of its business. It had undoubtedly the same power, for like purposes, to endorse and guarantee notes of its customers or other persons when done solely for its own uses and directly for its own benefit. We are not, then, in a strict sense, dealing with a case where there was no power at all to do the particular thing under discussion, but rather with a case in which, to put it most strongly in favor of the defendant in error, there was a misuse of a granted power. The doctrine of *ultra vires,* therefore, can, as we believe, have little application. This doctrine is perhaps best stated in the case of Central Transportation Co. v. Pullman Palace Car Co., 139 U. S., 50, where it is said:

"A contract of a corporation, which is *ultra vires,* in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract can not be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it."

Again, in the case of McCormick v. Market National Bank, 165 U. S., 538, it is said: "The doctrine of *ultra vires,* by which a contract made by a corporation beyond the scope of its corporate powers is unlawful and void and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: The obligation of anyone contracting with a corporation to take notice of the legal limits of its powers; the interests of the stockholders not to be subject to risks which they have never undertaken; and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law. Pearce v. Madison & Ind. Ry. Co., 21 How., 441; Pittsburg, Chicago, etc., Ry. Co. v. Keokuk & H. Bridge Co., 131 U. S., 371, 384; Central Transp. Co. v. Pullman Pal. C. Co., 139 U. S., 24, 48."

Now, then, in the light of the provisions of our statutes and the well established rules by which we must be governed, let us examine the case in hand. In the first place, it is well settled that the fact that a portion of the consideration paid for the note by Gaston & Ayres, was the cancellation and extinguishment of a preexisting debt due it, constituted them none the less bona fide purchasers. Blum v. Loggins, 53 Texas, 121; Alstins Exrs. v. Cundiff, 52 Texas, 453; Heffron v. Cunningham, 76 Texas, 318; Herman v. Gunter, 83 Texas, 69, 29 Am. St., 632; Rowe v. Gohlman, 44 Texas Civ. App., 315. Again, it is rendered certain that the acting officer of the Campbell Company, I. L. Campbell, did not know Ross L. Clark, to whom the note was made payable, and that the note was executed by Campbell and guaranteed by the company, to raise money for the company and that at least $6,500 of the proceeds of the note was applied to the company's indebtedness, and that said sum, at least, has been retained by the company and that there has been at no time any offer made to return or restore it to Gaston & Ayres. The case,

therefore, comes squarely within the rule laid down by Judge San-
born in Lyon, Potter & Co. v. First National Bank of Sioux City,
85 Fed., 120, 29 C. C. A., 45, where on almost the same facts it was
said:

"Lyon, Potter & Co. was a trading corporation. It and its treas-
urer, Potter, who indorsed its name upon this note, had the power
to make and indorse commercial paper with the name of this corpora-
tion for its benefit in the ordinary course of its commercal business.
But neither of them had the power to make or indorse such paper
in the name of the corporation without consideration, and for the sole
benefit of another. It is ultra vires of a commercial corporation and
its officers to make accommodation paper, or to guaranty the pay-
ment of the obligations of others. National Park Bank v. German-
American Mut. Warehouse & Sec. Co., 116 N. Y., 281, 292, 5 L. R.
A., 673; Central Bank v. Empire Stone Dressing Co., 26 Barb., 23;
Bridgeport City Bank v. Empire Stone Dressing Co., 30 Barb., 421;
Farmers & Mechanics Bank v. Empire Stone Dressing Co., 5 Bosw.,
275; Morford v. Bank, 26 Barb., 568; Bank of Genesee v. Patchin
Bank, 13 N. Y., 309; Aetna Nat. Bank v. Charter Oak Life Ins. Co.,
50 Conn., 167; Monument Nat. Bank v. Globe Works, 101 Mass.,
57, 3 Am. Rep., 322; Davis v. Railroad Co., 131 Mass., 258, 41 Am.
Rep., 221; Culver v. Real Estate Co., 91 Pa., 367; Hall v. Turn-
pike Co., 27 Cal., 255, 87 Am. Dec., 75; Madison W. & M. Plank
Road Co. v. Watertown & P. Plank Road Co., 7 Wis., 59; Lucas v.
Transfer Co., 70 Iowa, 541, 549, 30 N. W., 771. An indorsement of
this character, however, is not *malum in se,* is not prohibited by
statute, and is not beyond the general scope of the powers of such a
corporation. It is merely an excessive exercise of one of those powers
—an excessive exercise of the power which it has, in proper cases,
to make and indorse commercial paper. Where such an indorsement
has been apparently made for the benefit of the corporation, and has
been in fact made partly for its own benefit and partly for the ac-
commodation of another, and the corporation has received and retained
the benefits of the indorsement, the contract is not void, because it is
no defense for a private corporation against the enforcement of an
executed contract whose benefits it holds that, while its execution was
within the general scope of its powers, it involved an excessive exer-
cise of one of them. While such a corporation retains the benefits of
such a contract, it silently affirms, and must not be permitted to
deny, its validity. Sioux City Terminal R. & W. Co. v. Trust Co.
of North America, 82 Fed., 124, 135, 27 C. C. A., 73; Union Natl.
Bank v. Matthews, 98 U. S., 621; National Bank of Genesee v. Whit-
ney, 103 U. S., 99, 109; Humphrey v. Association, 50 Iowa, 607, 610,
612; Garrett v. Plow Co., 70 Iowa, 697, 701, 29 N. W., 395; War-
field v. Canning Co., 72 Iowa, 666, 672, 34 N. W. 467; Manchester
& L. R. Co. v. Concord R. R. Co., 66 N. H., 100; Poole v. Asso-
ciation, 30 Fed., 513, 520; Allis v. Jones, 45 Fed., 148, 150; Parish
v. Wheeler, 22 N. Y., 494; Hays v. Coal Co., 29 Ohio St., 330, 340;
Bissell v. Railroad Co., 22 N. Y., 258; McCluer v. Railroad Co.,
13 Gray, 124; Bradley v. Ballard, 55 Ill., 413, 417; Rutland & B. R.
R. Co. v. Proctor, 29 Vt., 93."

The case here is easily distinguishable, in its facts, from the cases relied on by defendant in error, all of which we have carefully read. In all these cases, wthout discussing each of them in detail, it appeared either that the corporation executing the guaranty was without legal authority to execute the contract sued on at all, or that the note sued on by its terms gave notice of its vice and infirmity, that it was obtained without payment of what in law is termed valuable consideration, or that the purchaser when he received the note thereafter sued on had notice that the endorsement was without consideration. This is true in whole or in part in the cases of Park Hotel Co. v. Fourth National Bank, 86 Fed., 742, 30 C. C. A., 409; Capital City Brick Co. v. Jackson, 2 Ga. App., 771, 57 S. E., 92; Greene v. Middleboro Town & Land Co., 121 Ky., 355, 89 S. W., 228; Humboldt Mining Co. v. American Mfg. Min. & Mil. Co., 62 Fed., 356, 10 C. C. A., 415; Deaton Grocery Co. v. International Harvester Co., 47 Texas Civ. App., 267, and North Side Railway Co. v. Worthington, 88 Texas, 562, 53 Am. St., 778. Again, it seems to us that when analyzed, in the light of the uncontroverted evidence, the whole case comes to this: The transaction in question was in fact by the company and for the company. Now, if the company had executed the note in its proper name and same had been endorsed or guaranteed by I. L. Campbell, it would not be questioned that the company would be liable at the suit of any purchaser for value, without notice. Can the fact that, as matter of convenience, in a transaction in which the company was the real actor and in which it only was to be benefited, the note was in form made the obligation of I. L. Campbell and at the same time guaranteed by the company change the rights of a bona fide holder thereof? Suppose I. L. Campbell had been compelled to have paid this note; can it be doubted that he would have the right to reimbursement from the company, if the company had received the entire consideration? Now, no one will question the statement that the rights of Gaston & Ayres can not be made to depend on the disposition made of the proceeds of the note by Clark. We come, therefore, to the question, shall the rights of the parties and the right and justice of the case be made to depend on the mere form the transaction took or the apparel in which it was clothed? We can not think so. The law ever pays but scant respect to mere appearance, but should and does give its first attention to the realities and very truth of every transaction. Holding these views it results that having the right to borrow money and having obtained on its note the money of these plaintiffs in error who were, in the transaction, without blame or fault, the company must under the law, and should as a matter of right, repay them. We agree with the trial court and the Court of Civil Appeals that there was no legal evidence raising the issue that the sum paid T. W. House was or that the sum should be treated as the funds of I. L. Campbell. The transaction in its inception and until the note was given and guaranteed was the act and business for the benefit of the company and must be treated as such. No mere entry, subsequent thereto, on the books of the company can change its character or alter or affect the rights of the parties.

It is therefore ordered that the judgment of the Court of Civil Appeals be and the same is hereby reversed and the cause is remanded with instructions to the District Court to render judgment in favor of Gaston & Ayres for its full amount of the note sued on and for all costs.

Filed November 15, 1911.

### ON MOTION FOR REHEARING.

In an opinion rendered at a former day of this Court it was ordered "that the judgment of the Court of Civil Appeals be and the same is hereby reversed and the cause is remanded with instructions to the District Court to render judgment in favor of Gaston & Ayres for the full amount of the note sued on and for all costs." Complaint is made in a motion for rehearing that this order is obscure and that it is not entirely clear from the opinion whether the court intended to instruct the District Court to render judgment for the principal of the note sued on and all interest up to the date of the judgment or to render judgments for the principal and for interest up to the time the property of the J. I. Campbell Company went into the hands of the receiver, if the company should be insolvent, or up to the date of the judgment, if the company should prove to be solvent. We think the motion is meritorious and that the judgment is obscure in the respect noted. For this reason the judgment heretofore directed to be entered will be modified so as to direct the District Court to render judgment for the interveners, Gaston & Ayres, for the principle of the note sued on with interest as specified in the note up to the date of the judgment, if the company shall be found to be solvent, together with its attorney's fees. But if said company should be found to be insolvent, then interest should be allowed up to the 14th day of February, 1905, when the receivership proceedings began, and the court is directed to enter judgment accordingly. Thomas v. Car Co., 149 U. S., 95; People v. Loan & Trust Co., 172 N. Y., 379 (65 N. E., 200); Brazelton & Johnson v. J. I. Campbell Co., 108 S. W., 773; First National Bank of Houston v. J. I. Campbell Co., 114 S. W., 887; Atlantic Natl. Bank v. Four States Grocer Co., 135 S. W., 1135.

Filed December 20, 1911.