## MARY T. OWENS ET AL.

### v.

## GUY STAPP, RECEIVER, ETC.

32   653
45   489
32   653
59   138

*Banks—Fraudulent Acts of Cashier of National Bank—Acts Ultra Vires—Acceptance by Bank of Benefits—Can Not Escape Liabilities—Interest on Overdrafts.*

1. A bank should not be allowed interest on overdrafts of a depositor.

2. The evidence in the case at bar shows that the acts of the cashier were intended by the parties to be in his official and not in his individual capacity.

3. Acts of a cashier of a bank, in behalf of the bank, not criminal nor contrary to public policy, though not strictly within the powers of the bank, done in the course of a transaction which has been executed in whole or in part, can not be so repudiated by the bank that it should enjoy the benefits and escape the liabilities of the transaction.

[Opinion filed December 16, 1889.]

IN ERROR to the Circuit Court of Warren County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. PORTER & MACDILL, for plaintiffs in error.

Messrs. KIRKPATRICK & ALEXANDER and R. J. GRIER, for defendant in error.

UPTON, P. J.   This was a bill in equity brought by plaintiffs in error to the Circuit Court of Warren County, against defendants in error, in which is prayed special and general relief, upon the following facts, which are in substance set forth in the bill.

The First National Bank of Monmouth, Illinois, was duly organized under the act of Congress know as the "National Banking Act." B. T. O. Hubbard was its cashier duly appointed.   James F. Owens, husband of Mary T. Owens, was indebted to various persons, and on the 21st of May, 1880,

applied to the bank to learn of a source from whence he could obtain about $2,400, with which to liquidate that indebtedness. Hubbard, its cashier, acting for the bank, offered to make to him the desired loan from the bank, and the offer was accepted, for which Owens executed three notes payable to Hubbard, one for $1,000, and two for $700 each, all due and payable in three years from date, with interest at eight per cent. To secure these notes Owens and his wife, plaintiffs in error, joined in a mortgage upon the real estate of the wife. The interest as it became due upon this loan was paid by Owens to Hubbard in each year at the bank.

October 30, 1883, Jas. F. Owens made a further loan of the bank through its cashier, of the sum of $280, due in ninety days, and his wife, Mary T., joined in a note payable to the bank therefor. Some time about February 1, 1883, this indebtedness being past due, Owens was in need of more money, being pressed for payment, and was informed by Hubbard that the bank held the three notes given for the $2,400 loan of May 21, 1880, and that it would be willing and was desirous to renew that loan upon the same security as then held for the old loan of May 21st. It was agreed that the bank should make a new loan of $3,500 to Owens, the money to be applied to the satisfaction of the notes secured by the mortgage of May 21, 1880, and about nine months interest thereon, and in satisfaction of the $280 note; cancel all these notes and surrender the same to Owens; cancel and release of record the mortgage of May 21st, and cause to be placed of record the new mortgage to secure said last loan, and place the balance of the $3,500, remaining after making such payments, to the credit of Jas. F. Owens on the books of the bank.

In pursuance of this last mentioned agreement, plaintiffs in error executed four notes, bearing date February 1, 1884, payable in three years from date to Hubbard (cashier), together with a mortgage to secure the same, (which notes bore interest at eight per cent per annum, both Owens and his wife joining in the execution thereof,) on the land of the wife, being the same security which had been agreed upon, and delivered the same so executed, to its cashier at the bank.

When these notes and mortgage were delivered, Hubbard informed plaintiffs in error, that he could not complete the matter at that time, by the delivery and cancellation of the notes of date of May 21, 1880, for the reason, as he then stated, that one of the notes was not then in the bank, but would be in a few days, and then the whole matter should be closed up and completed as had been agreed.   To obviate all trouble to plaintiffs in error by this delay, it was agreed that Jas. F. Owens might draw checks on the bank the same as if such balance had been ascertained and placed to the credit of plaintiffs in error, and when the note was returned, he, Hubbard, would ascertain the exact balance and complete the agreement by giving the credit on the books of the bank, cancel and deliver the old notes of May 21, 1880, release the mortgage given to secure the same, and deliver said canceled and released notes and mortgage, together with the $280 note to Jas. F. Owens, as he had previously agreed to do.   These notes were never delivered, nor the old mortgage released, nor the credit given on the books of the bank, and but one of the notes taken up and canceled, as hereafter stated.

Not one of the notes of May 21, 1880, were, at the time of making the before mentioned agreements, in possession of the bank.   Its cashier, Hubbard, had taken those notes before that time, and sold and transferred the same to certain custo ners of the bank—the note of $1,000 to one William P. Pressley, one for $700 to a Miss French, and the other one for $700 to one Cyrus Atwood, all of which was unknown to the directors of the bank, or the plaintiffs in error.

In the performance of the agreement, however, Hubbard, on or about February 6, 1884, negotiated two of the new notes of date February 1st, one for $1,000 and the one for $500, to the same William P. Pressley, who then held the $1,000 of May 21, 1880, taking up and canceling the $1,000 note of May 21, 1880, and on the 8th of February, 1884, Hubbard assigned one other of the $1,000 new notes, dated February 1, 1884, to one David Haley, in consideration of $1,000, which the bank owed Haley on certificates of deposit issued by the bank. Pressley paid Hubbard, for the bank, for the two notes pur-

chased as above stated, by his check on the bank for the difference between the note then held by him of $1,000, of date May 21, 1880, and interest thereon for about nine months, and the $1,500, being the face of the two notes purchased by Pressley, the amount of such check being $443.78, and the cashier, Hubbard, allowed James F. Owens to draw on the bank from February 6, 1884, under said agreement, to March 5, 1884, about $563.14.

In that condition matters remained, with one note of $1,000, of date May 21, 1880, taken up and canceled, and one of the $1,000 notes of date February 1, 1884, and the mortgage, in possession of the bank (the note not indorsed), the old mortgage of May 21, 1880, then and still uncanceled, and the new one unrecorded, until April 5, 1884, when the directors of the bank, learning of the fraudulent acts and defalcation of its cashier, Hubbard, took control of its affairs from the hands of its cashier, Hubbard, who before that time had been in almost exclusive control thereof—placed the same in the custody of John Carr, one of its directors, and on the 8th of April, 1884, the bank closed its doors, went into liquidation, and defendant in error—Guy Stapp—was appointed its receiver, under and pursuant to the provisions of the above mentioned banking act. In the meantime, Carr, acting for the bank and before it ceased its business as a bank, placed the mortgage of date February 1, 1884, on record, while the notes for $700 each, in the hands of Atwood and French, were outstanding, and while the note for $280 was in the possession of the bank uncanceled, and no credit given upon the books of the bank to Owens, as had been agreed, and the books of the bank showed overdrafts against Owens of $512.04. The plaintiffs in error admit in their bill of complaint, that Pressley, Atwood, French and Haley hold as innocent purchasers for value, notes secured on the lands of Mary P. Owens, amounting in the aggregate to the sum of $3,900 as principal; ask relief against the bank for the wrongful acts of its cashier and director, Carr; pray that the note for $280 and the overdrafts for $512.04 be canceled, and seek a decree against the bank for the excess over $3,500 (evidenced by the

note held by Pressley, Atwood, French and Haley as before
stated, against the lands of Mary T. Owens), and that the
$1,000 note, of date February 1, 1884, not negotiated, be
surrendered, and for general relief.

Defendant in error, Guy Stapp, as receiver, answers, denying
the allegations of the bill, and filed his cross-bill, claiming that
the bank held the $1,000 note of February 1, 1884, with the
mortgage of same date, as collateral security for the note of
$280, date October 30th, and the overdrafts of J. F. Owens
amounting to $512.04; made Pressley, Atwood, French and
Haley defendants, and prayed for foreclosure of the mortgage
of February 1, 1884. Answers to cross bill and replications
were duly filed, the proofs taken and heard, and the court
below denied the relief sought in the original bill, except to
decree that the defendant in error, Guy Stapp, should cancel
and surrender the $1,000 note of date February 1, 1884.

On the cross-bill the court held, that the note of $280 of
October 30th, was still due and unpaid, and also the overdrafts
were due and not paid, and rendered a decree in favor of
Guy Stapp, as such receiver, against Mary T. Owens and James
F. Owens jointly, for the amount of the $280 note and interest,
aggregating $377.37.

And the court below also rendered a decree against
James F. Owens individually for the amount of such over-
drafts and interests thereon in the sum of $640.04 and refused
other relief. To this decree both parties excepted and have
assigned errors of record.

In this decree we think the court below erred. Interest
under our statute can only be allowed by agreement of the
parties, on written instruments, or on an account stated and
agreed upon between the parties, in the class of cases now
before us, and not otherwise; and the court was in error in
allowing interest on the amount claimed for the overdrafts as
appeared upon the books of the bank.

That court also erred in our judgment in holding that the
several transactions hereinbefore stated with B. T. O. Hub-
bard as the cashier of the bank were the individual transac-
tions of Hubbard, for which the bank was not liable, and also

erred in holding that such transactions between Hubbard, in behalf of the bank, even if done in its behalf with the plaintiffs in error, were *ultra vires* to the extent claimed.

We think the evidence sufficiently shows that the entire transactions between James F. Owens and Hubbard were all done and transacted in behalf and for the benefit of the bank and were so understood and intended at the time, both on the part of the cashier, Hubbard, and Owens, and was in no way the personal business of Hubbard or one in which he was in any manner personally lawfully interested. The note for $1,000, of date February 1, 1884, then unsold, was found among the other papers and assets of the bank. To this note was attached a memorandum which manifested beyond cavil that it was an affair of the bank, and not that of Hubbard personally. This memorandum, which is in the handwriting of Hubbard, shows the accounts in the bank of this transaction; the overdraft of $512.04 from the $1,000, received from the sale of the note to Haley, left the sum of $487.96 as therein stated, if that had been charged to the bank as it should have been on the bank books. It is not pretended that Hubbard kept any private books of account in other transactions of like character, while acting as such cashier, of which there were others. It was done for the benefit of the bank and not for himself, and this memorandum, with the other circumstances in the case, are conclusive in our judgment that such was the intention. It is further manifested by the way the business was transacted in the fact of allowing an overdraft to the amount of $512, with no credit on the books or security to the bank therefor.

It is urged here, as a complete answer to all the facts and circumstances (to some of which we have above alluded) that such transactions were not within the powers of the bank, under its charter. This, if conceded to be strictly true in a technical sense, does not bar the relief sought; for the transactions in the case at bar, as shown by the record, were not criminal nor against public policy, and when *once executed in whole or in part as in this case*, the bank can not repudiate the transaction, hold and enjoy the benefits, and escape the liabilities.

The note was made to Hubbard, no doubt as cashier—though that designation does not appear—sold, and the money from Haley and Pressley received by and for the benefit of the bank.    The bank must account for it—in equity and good conscience it should—and we see no legal obstacle to its being compelled so to do, at least to the extent that the agreement had been executed.    Had the agreement been unperformed on the part of the bank, while it remained executory, the principle of "*ultra vires*" might apply, perhaps, but which need not be determined here.    First Nat. Bk. of Monmouth v. Brooks, 22 Ill. App. 238, and cases cited therein; Ohio and Min. Ry. Co. v. McCarty, 6 Otto (U. S.), 258; Darst v. Gale, 83 Ill. 141; Bradley v. Ballard, 55 Ill. 413; Ward v. Johnson, 95 Ill. 240; 65 Ill. 458–60; N. W. Bk. v. Matthews, 8 Otto (U. S.), 621; Fortin v. Nat. Bk., 112 U. S. 439; N. Bk. v. Whitney, 103 U. S. 99.

Thus it appears, that while Hubbard managed the affairs of the bank, he proceeded in the performance of the agreement under which Owens delivered to the bank these notes and mortgage for $3,500 as before stated, to take up and cancel the $1,000 note in Pressley's hands of date of May 21, 1880, and substituted in lieu thereof one of the new notes, date February 1, 1884, for $1,000, and had sold to Pressley one of the new series of notes for $500 of the same date, and one other of this new series to Haley for $1,000, aggregating the sum of $2,500, leaving in the bank the other one of this new series of notes for the sum of $1,000, undisposed of—and he had allowed James F. Owens to check out (or overdraw) from the bank $512.04 as shown by its books.

So far the original contract with plaintiffs in error was completed, when, on the 8th day of April, 1884, the cashier was relieved of his duties at the bank, the directors took charge of its affairs and filed the new mortgage dated February 1, 1884, for record, and the same was thereafter recorded; the bank holding the remaining $1,000 note of plaintiffs in error, refused to surrender it, and claimed to hold it by right of some agreement between the makers thereof and the bank, by which such note became, and was of right held as collateral

security for the overdraft of $512.04 (to substantiate which claim there is no evidence in this record), and refused to carry out the original contract. After the bank went into liquidation and the defendant in error, Guy Stapp, took charge of its affairs, this claim of the bank, as before stated, was by him made and re-asserted in his cross-bill filed herein. Why then, should not the bank be charged with this contract made by its cashier, so far as it has received the benefits thereof, or has ratified it, either in whole or in part? Clearly, Hubbard, as cashier, has authority to bind the bank in making the agreement for the loan of the $3,500 in money to plaintiffs in error, and that the bank can not now repudiate that contract and keep its fruits, seems equally clear. Railway Co. v. McCarthy, 6 Otto (U. S.), 258; Twin Lick Oil Co. v. Maebury, 1 Otto (U. S.),.587; Fleckner v. U. S. Bank, 8 Wheaton (U. S.) ,357; Mechs. Bk. of Alexandria v. Bk. of Columbia, 5 Wheat. 326; Bk. of U. S. v. Dandridge, 12 Wheat. U. S. 64; Casey v. Society Credit, 2 Woods, 77, and Thompson N. B. Cases, 293.

Where a corporation is acting within the scope and purposes of its organization, all parol contracts made by its authorized agents are held as express promises of such corporation, and the benefits arising therefrom or conferred thereby raise implied promises and legal obligations, for the enforcement of which an action lies against such corporation. Bank of Columbia v. Patterson, 7 Cranch. (U. S.) 299; 5 Wheat., *supra*, 326; 8 Wheat., *supra*, 338; Bk. of Metropolis v. Gultshlick, 14 Pet. (U. S.) 19; Gottpeid v. Miller, 104 U. S. 521.

To apply the doctrine of "*ultra vires*" to the case at bar, therefore, would work a legal wrong, which, as we have seen, is not allowed, and should not be. By the negotiation and sale of the Owen notes by its cashier, Hubbard, indebtedness of the bank has been paid to the amount of nearly $1,500, and the bank is now indebted to Mary T. Owens (whose property was pledged for the payment of the $3,500 loan as well as the previous loan of $2,400), and it should account to her for the amount of that indebtedness, or to the extent of whatever amount was so paid by her securities.

Owens v. Stapp.

In the view we take of this case under the evidence, as already indicated, the court below should have dismissed the cross-bill of Guy Stapp, receiver, etc., for want of equity, and have granted the relief to plaintiffs in error, sought by the original bill of complaint, as follows:

First. Order and decree that the note of $1,000, dated May 21, 1880, now canceled and held by the receiver, be delivered plaintiffs in error. Second. Charge the bank with the amount of moneys received from the sale to Haley of the $1,000 note of date February 1, 1884, which was paid by the certificate of deposit, as before stated, also the amount received from Pressley on the sale to him of the $500 note of date February 1, 1884, being $443.78 (or the actual amount when ascertained), for which was given his check on the bank at the time of such purchase, as above stated, and from this amount, when ascertained, deduct this overdraft of Jas. F. Owens of $512.04, or for the actual amount of such overdraft, when ascertained, without interest, and also deduct the $280 note of date October 30, 1883, with interest to the date of such decree, and further direct and decree that the note for $280, aforesaid, and the note for $1,000, of date February 1, 1884, now in the possession of such receiver, be canceled and delivered to plaintiffs in error, or one of them, and if upon such adjustment, made as above indicated, any balance shall be found due to plaintiffs in error, or to either of them, order the same paid in due course of distribution, etc., by the said receiver.

For that purpose the decree below on the original and cross-bills is reversed, and the cause is remanded to the Circuit Court for its further action in accordance with the views above expressed.

*Reversed and remanded with instructions.*