## Thomas R. Squires v. The First National Bank of Monmouth.

1. EVIDENCE—*What is, of a Cause of Action.*—The following instru-ment:

D. Rankin, Prest.    Joseph Stevenson, Vice Prest.    B. T. O. Hubbard, Cash.

2751.

First National Bank of Monmouth.

Capital, $75,000.

MONMOUTH, ILL., Feb. 15, 1884.

T. R. Squires has this day left eight hundred dollars to be loaned for

his use at not less than eight per cent interest, payable not to exceed six months, on return of this memorandum.

B. T. O. Hubbard,
(Scroll.)

is held to show, *prima facie*, a cause of action.

2. Banks—*Powers of the Cashier.*—A cashier of a bank is necessarily the general agent of the bank in dealing with customers in money, notes and bills, the receipt, deposit, transfer and payment of them. It is indispensable to the bank and necessary for the protection and security of customers that he should exercise these powers and that his acts should bind his employers.

3. Same—*Power to Loan Money for Customers.*—Receiving money to be loaned for a customer is not against any express provisions of the banking law or any general law, nor is it immoral, or against public policy; and although the bank might, after receiving the money, refuse to go ahead and make the loan, it can not refuse to repay the money.

**Assumpsit, on Certificate of Deposit.**—Appeal from the Circuit Court of Warren County; the Hon. John J. Glenn, Judge, presiding. Heard in this court at the December term, 1894. Reversed and remanded. Opinion filed May 28, 1895.

John Porter, attorney for appellant.

Grier & Stewart, attorneys for appellee.

Mr. Presiding Justice Lacey delivered the opinion of the Court.

This suit was commenced August 4, 1893, by appellant. The declaration is in assumpsit, containing one special count and the common counts in the usual form. The only cause of action is based on the following instrument:

D. Rankin, Pres't.     Joseph Stevenson, Vice Pres't.
B. T. O. Hubbard, Cash.   2751.

First National Bank of Monmouth.     Capital $75,000.

Monmouth, Ill., Feb. 15, 1884.

T. R. Squires has this day left eight hundred dollars to be loaned for his use at not less than eight per cent interest, payable not to exceed six months, on return of this memorandum.

B. T. O. Hubbard, Chr.

The bank is now in the hands of a receiver, Guy Stapp.

The case was tried before a jury, and the above instrument was introduced in evidence. The appellant then introduced Willis S. Hubbard, son of B. T. O. Hubbard, who testified to the signature of his father, and that B. T. O. Hubbard was the cashier of the bank at the time the instrument was signed, and that the scroll attached to it was the way he generally signed it as cashier; he also testified that the paper with the heading on which the instrument was signed was used as the common paper of the bank in banking transactions, with a knowledge of the directors, but the court refused to allow the witness to testify whether the number on the paper in question was the number of the bank; also testified that his father died in June, 1889. The court then excluded the printing on the head of the paper, but allowed the bottom of it, containing date and body of the instrument, to go to the jury. The plaintiff then went to the witness stand, and testified that he obtained the paper on the 15th day of February, 1884, at the First National Bank in Monmouth, but the court refused to allow the witness to state where Hubbard was when he made the memorandum or to state whether he had any transaction with said Hubbard in any other capacity than as cashier of the bank; then on motion of the defendant, the court withdrew all the evidence from the jury, and instructed it as follows : " The court instructs the jury that in this case their verdict should be for the defendant." Thereupon the jury rendered a verdict for the defendant. Appellant moved for a new trial which the court overruled, and gave judgment against the plaintiff for costs. The only question presented to this court is whether the instrument in question and evidence introduced show any cause of action. In determining that question we must decide whether the instrument in question, with the accompanying facts, show the deposit of money in the bank, or whether it was an individual transaction of Hubbard's. The instrument, it is true, fails to show in so many words who received the money, the bank, or Hubbard individually. We think that it must be held to be a transaction of the bank. Hubbard was acting as

cashier, the money was deposited with him at the bank, and he signed the check as cashier, with his designated scroll, Chr. The record in this case shows that the scroll was composed of the letters "Chr.," which stands for cashier. Besides, his son testified that this was his usual scroll when he signed papers as cashier. If there was no undertaking by the instrument to handle the money in any particular way, it seems to us that there could be no doubt but that Hubbard received the money as cashier of the bank. A cashier of a bank is necessarily the general agent of the bank in dealing with customers in money, notes and bills, the receipt, deposit, transfer and payment of them. It is indispensable to the corporation and necessary for the protection and security of customers that he should exercise those powers, and that his acts should bind his employers. Ryan v. Dunlap et al., 17 Ill. 40; The President, etc., v. Kane, Breese, 45, 75; Home Life Ins. Co. v. Pierce, 75 Ill. 426.

It is insisted that this can not be regarded as a transaction with the bank, because Hubbard, for the bank, undertook to loan the money for the customer, the plaintiff, which it is insisted was beyond the power of the bank under its charter to do, and therefore *ultra vires;* but it will be observed that such an undertaking is not against an express provision of the statute under which the bank is organized, or any general law, nor is it immoral, nor against public policy; and if the bank had proceeded to loan the money without objection, and had completed the transaction, it might collect its charges for so doing, the transaction being completed. The bank might, however, after receiving the money, refuse to go ahead with the loan, but it could not refuse to repay the money to the plaintiff received by it through its cashier. If the bank could defeat an action on an instrument like this, a cashier, by adding a little something in a receipt, could undertake to do something that the bank was not authorized to do; could defeat unwary depositors of their just claims, and discredit banks themselves. We have had occasion to consider the right

of recovery on instruments similar to this on two occasions, which illustrates the manner of doing business by this cashier, Hubbard, in those cases. There was, however, some additional proof aside from the certificate of deposit. See First National Bank of Monmouth v. Wm. H. Brooks, 22 Ill. App. 246, and authorities cited, a case very carefully considered by this court; also Owen v. Stapp, 32 Ill. App. 653.

We are of the opinion that this certificate of deposit showed a cause of action at least *prima facie;* whether conclusively we need not decide. For the above reasons the judgment of the court below is reversed and the cause remanded.

MR. JUSTICE CARTWRIGHT dissents.