### JAMES B. POSEY, TRUSTEE, v. S. A. McMANIS.

#### Decided March 15, 1902.

**1.—Bankruptcy—Action by Trustee—Preference—Burden of Proof.**

A trustee in bankruptcy suing to set aside a transfer of property made by the bankrupt within four months prior to the filing of the bankrupt's petition has the burden of showing that at the time of the transfer the bankrupt's property was insufficient. at a fair valuation, to pay his debts, and that such transfer would allow a creditor to obtain a greater percentage of his debts than other creditors. Bankrupt Act of 1898, sec. 60, pars. A and B.

**2.—Same—Insolvency Defined.**

Where the bankrupt's property at the time of such transfer equaled or exceeded in value the amount of his debt, he was not insolvent within the meaning of the statute, even though he may not have been able to meet his debts then falling due by payment of them in money.

**3.—Same—Mortgaged Property Estimated, When.**

In determining whether the bankrupt was insolvent, the estimate of his property should include property covered by a mortgage not shown to have been made to delay or defraud creditors. Bankrupt Act, sec. 1, subdiv. 15.

**4.—Same—Transfer Held Not Fraudulent.**

A transfer by a debtor of property at a fair valuation made to a creditor who was amply secured by a first mortgage on other property, and who released such other property, was not a preference, since it could not have enabled the creditor to obtain a greater percentage of his debt.

Appeal from Floyd. Tried below before Hon. S. I. Newton.

*B. E. Green,* for appellant.

*R. J. Miller* and *Jas. R. Robinson,* for appellee.

CONNER, CHIEF JUSTICE.—The appellant's statement of the nature and result of this suit is accepted by appellee, and adopted by us as correct. It is as follows: "This is a suit in the District Court of Floyd County, by James B. Posey, trustee in bankruptcy of the estate of W. P. Yonng, bankrupt, against S. A. McManis, to recover the value of certain property transferred by said Young, while insolvent, to said

McManis, who had received the same from Young within four months of the filing of the petition in bankruptcy against Young.

"The plaintiff alleges in substance: That W. P. Young, in March, 1899, was a merchant at Floydada, in Floyd County, Texas; that on said date, and for a long time prior thereto, he was insolvent, and among other indebtedness was indebted to S. A. McManis, the defendant, in the sum of $960; that on the 27th day of March, 1899, Young gave a preference to defendant by transferring to him the merchandise, notes, and accounts of the said Young, of the alleged value of $1500; that said merchandise, notes, and accounts was all the property of that class owned by Young; that said transfer of the property by Young to defendant was made with the intent to prefer defendant over other creditors of Young, and that defendant at the time of taking and receiving said transfer of property, had reasonable cause to believe said Young to be insolvent, and that such transfer was made by Young with intent to prefer defendant over other creditors of Young, and that said transfer was received by defendant with the intent and purpose to carry out the said preference, so intended by Young; that said transfer was made within four months before the filing of the petition in bankruptcy, and that defendant had converted said property into money for the use of plaintiff, to be used in the payment of debts of the bankrupt's estate, and that defendant had paid no part of it to plaintiff. Defendant plead the general denial. A trial was had before a jury on September 4th, and a verdict rendered against plaintiff and judgment was rendered accordingly."

The testimony in the record is short and the material facts proven upon the trial are substantially as follows: That on May 19, 1899, certain creditors of W. P. Young filed in the District Court of the United States for the Western District of Texas a petition praying that said Young be adjudged a bankrupt, under the act of Congress establishing a uniform system of bankruptcy; that proceedings were duly had upon said petition, and W. P. Young was, on July 20, 1899, adjudged a bankrupt; that on August 15, 1899, James B. Posey, the plaintiff, was duly appointed trustee in bankruptcy of the estate of said Young, bankrupt, filed his bond and qualified as such trustee, and is the qualified and acting trustee of said estate. Plaintiff proved by the defendant that he was well acquainted with W. P. Young during the time he was in the mercantile business at the town of Floydada, in Floyd County, and was acquainted with Young's business affairs, his business qualifications, what he owned and what he owed and who he owed, and the approximate aggregate amount of his indebtedness; that he rendered Young small favors in receiving and marking the goods; that he read some of Young's correspondence and saw his invoices and statements; that Young had confidence in defendant; that in the month of March, 1899, Young offered to sell out to defendant his entire stock of merchandise, storehouse, and lot. On the morning of March 27, 1899, Young went to defendant's house in Floydada and wanted to sell out

to defendant, and said he (Young) could not pay his debts in the business he was following. Defendant asked Young, "If I buy you out, what are you going to do with your creditors?" Young replied that he would pay them just as soon as he could. The names of Young's creditors were called over and the amount due them, and defendant aggregated the amount to be about $1000. Young and appellee agreed upon the terms, and Young sold and made the proper transfers of his entire stock of merchandise, books, notes, and accounts, storehouse and lot, in consideration of $1150. The house and lot was worth about $125; the merchandise was worth about $800. There was no invoice taken of the merchandise. Defendant was one of Young's creditors. He owed defendant $915, by note secured by mortgage executed in November, 1898, on 175 head of cattle in Floyd County. The trade and transfer papers were made on March 27, 1899, and in a few days appellee took possession of said property and surrendered to Young his note, and released the mortgage and paid Young $236 in money. Appellee would not have completed the transaction had he known that Young would not pay his debts. At the time of the trade and prior thereto, appellee knew that Young was indebted to Smith, Walker & Co., of Amarillo, Texas, merchants, and to secure this debt Young had transferred, by mortgage, to Smith, Walker & Co. the same cattle on which appellee held a mortgage, and that it was on record in Floyd County, and that it was dated March 17, 1899, and that Young was indebted to other creditors in the sum of about $1000. The merchandise was all the property of that class owned by Young, and the cattle so mortgaged, which were of the value of $20 per head, was all the property of that class so owned. The amount of the Smith, Walker & Co.'s debt and mortgage is not shown in the record. At the time of the trade in question Young owned, besides the property above mentioned, horses of the value of $100, and a school land claim of the value of $750. Appellee also testified that Young was solvent at the time of the trade.

The sole ground of appellant's attack upon the transfer from Young to appellee, dated March 27, 1899, is that Young was insolvent at the time and intended thereby to prefer appellee over other creditors of Young, all of which appellee knew or had reasonable cause to know, and so knowing received the transfer with intent and purpose of carrying out the intended preference. We need not therefore consider the right conferred upon trustees in bankruptcy to set aside the transfer and recover the property or its value under paragraph E of section 67, or paragraph 4 of section 70 of the bankrupt act, on the ground that such transfer to appellee was made with the intent and purpose of hindering, delaying, and defrauding one or more of Young's creditors. The right here invoked is predicated upon paragraph B of section 60 of the bankrupt act. This paragraph is as follows: "If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting

therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such persons."

Paragraph A· of the same section gives the following definition of a "preference," which it is important to consider: "A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and ·the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

This in turn involves the necessity of determining precisely what is meant by the term "insolvent" as used in the bankrupt law. Subdivision 15, section 1, of the bankrupt act provides: "A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed,· with intent to defraud, hinder,· or delay his creditors, shall not, at ·a fair valuation, be deemed sufficient in amount to pay his debts."

It will thus be seen that to reverse the verdict of the jury and judgment of the court from which this appeal has been prosecuted, the burden rests upon appellant to show (1) that at the time of the transfer to appellee the aggregate amount of Young's property, exclusive of property which he may have conveyed, ·transferred, concealed, etc., with intent to defraud, hinder, or delay his creditors, at a fair valuation, was insufficient to pay his debts; (2) that the enforcement of the transfer to appellee will enable some one or more of Young's creditors to obtain a greater percentage of his debt than any other of such creditors of the same class; and (3) that appellee at the time of the transfer had reasonable cause to believe that it was Young's intent thereby to give such a preference. We do not· think such burden has been discharged. If Young was insolvent, and if in making the transfer a preference was attempted, appellee perhaps had reasonable notice thereof. But appellee's testimony· was that Young was solvent; that the total value of Young's· property at that time· was $5375; that Young's indebtedness to the: appellee was $915; to other persons than Smith, Walker & Co. $1000; and· the record entirely fails to show the amount of the Smith, Walker & Co. debt. So that construing the record most strongly against the party upon whom the burden rests, we have Young's total indebtedness $1950, with assets of $5375. This estimate includes the value of the cattle. ·It is insisted that the value of the cattle shall be excluded in determining Young's condition, because they had theretofore been mortgaged to Smith, Walker &· Co. While the term transfer is sufficiently comprehensive; within the meaning of the bankrupt law, to include a mortgage, yet it is only such transfers as have been made

"with intent to defraud, hinder, or delay" creditors that require the property so transferred to be excluded in determining the amount of the bankrupt's estate, or in determining whether the property of the bankrupt be sufficient in amount to pay his debts. This issue was, in effect, submitted to the jury, who found against appellant, although we have been unable to find in the record any evidence whatever that the mortgage to Smith, Walker & Co. was made with the inhibited purpose. So that we think it must be held that Young was solvent at the time of his transfer to appellee within the meaning of the present act. In this respect the definition of insolvency is said to be different from that of the bankrupt act of 1867.

Mr. Collier in his work on Bankruptcy, third edition, page 4, says: "The judicial definition of the word 'insolvency' as established by the decisions under the former act was, 'an inability to pay debts as they mature and become due and payable in the ordinary course of business, as persons carrying on that business usually do, in that which is made, by the laws of the United States, lawful money or legal tender to be used in the payment of debts, without reference to the amount of the debtor's property and without reference to the possibility or even certainty, that at a future time, on the settlement and winding up of all his affairs, his debts will be paid in full out of his property.' It was also held that 'the amount of the trader's property was of no consequence, if he was unable to pay his debts in lawful money as they matured.' But under the present act the value of the property must be considered. If at a fair valuation it equals the debtor's debts, he is not insolvent. This provision was one of the concessions made in the passing of the bill to those who first opposed it on the ground that its provisions would make a debtor liable unnecessarily to have his property taken from him because of a mere temporary embarrassment."

It has also been difficult for us to perceive in what manner the enforcement of the transfer in question had the effect of enabling appellee or any other of Young's creditors to obtain a greater percentage of his debt than another; which must appear before the transfer in question could be abrogated under paragraph A of section 60 of the bankrupt law hereinbefore quoted. The bona fides and validity of the mortgage and debt of appellee upon Young's cattle has in no manner been questioned, and such mortgage was not therefore subject to attack by the trustee. The value of the cattle was largely in excess of appellee's debt; so that he was subject to no hazard of loss. Neither does it appear that Smith, Walker & Co. obtained any advantage by reason of the fact that appellee's mortgage, which was a first one, was released. For aught that appears in the record the value of the cattle mortgaged was largely in excess of both debts and all costs and charges of full collection thereof. The very fact that under such circumstances appellee consented to become the beneficiary in a transfer in payment of his debt is corroborative of his good faith, and of his testimony to the effect

that he considered Young solvent at the time; otherwise we must assume that he deliberately released a certainty in the collection of his debt and engaged in an act denounced by the bankrupt law.

These conclusions dispose of the principal assignments of error presented. The assignment of error directed to a charge given by the court in response to questions asked by the jury we think is practically disposed of in what we have said, and finding no error therein, the judgment will be affirmed.

*Affirmed.*

Writ of error refused.

Hunter, Associate Justice. did not sit in this case.