Argued October 18, affirmed November 13, 1917.

## POLLOCK *v.* LUMBERMAN'S NAT. BANK.

(168 Pac. 616.)

**Appeal and Error—Filing Amended Answer—Additional Defense.**

1. Discretion of court in permitting filing of an amended answer setting up, not a substituted, but an additional defense, will not be interfered with, except in case of abuse.

**Banks and Banking—National Banks—Power to Negotiate Loans for Others.**

2. National banks have no power to negotiate loans for others.

**Banks and Banking—Action Against National Bank—Defense.**

3. A national bank's want of authority to act as broker in negotiating a loan for another is available as a defense to the bank, in an action against it by the lender, for whom it acted, for damages from its failure to lend on sound security.

From Multnomah: GEORGE N. DAVIS, Judge.

Action by M. L. Pollock against the Lumberman's National Bank of Portland. From a judgment of nonsuit, plaintiff appeals. Affirmed.

Department 1. Statement by MR. JUSTICE BENSON.

The complaint in this action alleges substantially that the plaintiff being ignorant of the limitations upon the powers of a national bank applied to the defendant bank through its agent Dukeheart, as assistant cashier, to lend some of plaintiff's money for him; that Dukeheart represented to him that the bank was authorized to negotiate loans for its depositors; that through such assistant cashier the bank agreed to loan a sum of money for him and to obtain from the borrower a valid promissory note of a solvent maker secured by first class, bankable collateral security; that thereafter Dukeheart informed him that such a loan had been negotiated and that the collateral security was ample; that he thereupon drew his check upon the Metropolitan Bank of New York City for the sum

of $900 in favor of the defendant bank ànd, upon defendants' representations regarding the sufficiency of the security, accepted a promissory note signed by J. W. Matthes, and as collateral, a deed to certain real estate in Portland, and an assignment of a contract of sale of certain other lands. These assertions are followed by an allegation

"that said defendants wholly failed to keep and perform their said agreement and did receive and pay out of said moneys of plaintiff and accept said note and the collateral purported to be described therein, well knowing that J. W. Matthes, the signer and maker of said note was at the date of said note, and now is insolvent and financially irresponsible, and that said note was of no commercial value."

Then follow allegations regarding the worthlessness of the securities, the payment of interest charges upon the same, the amount of the damages sought to be recovered and the usual prayer for judgment.

After denying the material averments of the complaint, the answer of the bank alleges that plaintiff loaned his money to Matthes after a full and careful examination of the borrower's financial responsibility and of the value and validity of the securities; that defendant advanced the money on plaintiff's check and at his request applied the money upon the loan to Matthes; and that at plaintiff's request and under his direction it paid from his account the interest charges on the collateral securities. It is further alleged that defendant as a national bank had no power to make or enter into such an agreement as that set out in the complaint.

A reply having been filed a trial was had wherein, after plaintiff introduced evidence and rested his case, a judgment of nonsuit was entered by the court from which plaintiff appeals.                      AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Wilson T. Hume.*

For respondent there was a brief over the names of *Messrs. Platt & Platt* and *Mr. Palmer C. Fales,* with an oral argument by *Mr. H. G. Platt.*

MR. JUSTICE BENSON delivered the opinion of the court.

There are two assignments of error. The first is based upon the fact that the defendant bank filed an amended answer before trial, without first obtaining leave of the court, which amendment set up the defense that defendant as a national bank had no authority or power to enter into such an agreement as that set out in the complaint. Plaintiff moved to strike such amended answer from the files for the reasons that it was filed without leave of the court and that it changed the ground of defense and the issues of the cause. The motion was denied and an exception to the ruling presents the question here.

1. It will be noted that the amended answer does not set up a substituted but an additional defense. To permit such an amendment is within the discretion of the trial court and its exercise of such discretion will not be interfered with except in case of abuse and there is no showing here to indicate that the court erred in permitting the amended answer to remain in the records as the defendant's final pleading: *Talbot v. Garretson,* 31 Or. 256 (49 Pac. 978).

2. It is also contended that the court erred in entering a judgment of nonsuit. It will be noted that the complaint alleges a contract whereby the bank was to act as broker for the purpose of lending plaintiff's money. A breach of such agreement is then asserted

and there is a prayer for damages for such breach.    It has been uniformly held that national banks have no power to negotiate loans for others: 3 R. C. L., p. 423, § 51; *Farmers & Merchants' Nat. Bank* v. *Smith,* 77 Fed. 129 (23 C. C. A. 80); *First Nat. Bank of Allentown* v. *Hoch,* 89 Pa. St. 324 (33 Am. Rep. 769); *Grow* v. *Cockrill,* 63 Ark. 418 (39 S. W. 60, 36 L. R. A. 89). In addition to the authorities cited this court in *Byron* v. *First Nat. Bank,* 75 Or. 296 (146 Pac. 516), through Mr. Justice McBRIDE says:

"It may be conceded, and it is the law, that a national bank cannot act as a broker; so, if the contract is to be construed in that aspect plaintiff's case must fail."

Our attention has been called to *Chapman* v. *First Nat. Bank,* 72 Or. 492 (143 Pac. 630), and *Doerstler* v. *First Nat. Bank,* 82 Or. 92 (161 Pac. 386). The former is a case wherein the complaint alleges a deposit by plaintiff and a refusal by the bank to honor his check or refund his money.    The bank answered that he had withdrawn his deposit.    The evidence disclosed that without authority the president of the bank obtained plaintiff's money by means of a memorandum check and appropriated it to his own use.    The question of *ultra vires* was not involved and not discussed.    The latter case was one wherein the complaint, as in the former, alleged a deposit and a refusal to repay.    After denials the answer asserted that plaintiff had requested the president of the bank to lend his money; the reply being that plaintiff had authorized the bank and not its president to act as broker.    In the opinion we find this language:

"Whether the bank under the circumstances could lawfully have loaned the money for plaintiff is a matter of no importance. *It says that it did not loan it,*

*and plaintiff says it did not loan it,* so the whole question comes down to this: Did plaintiff authorize Sheridan personally as his agent to draw out and loan the amount of his deposit? This the court left to the jury, and it has found that he was not so authorized."

We have italicized a part of the above quotation for the purpose of calling attention to an error in the published report of the case, wherein the second use of the word "not" is through some oversight omitted.

3. Counsel for appellant does not seriously contend that the agreement upon which the action is based is within the powers of the defendant bank, but insists that its want of authority can be raised only by the sovereign and cannot be made available as a defense in this proceeding. In *California Nat. Bank* v. *Kennedy,* 167 U. S. 362 (42 L. Ed. 198, 17 Sup. Ct. Rep. 831), Mr. Justice WHITE says:

"Whatever divergence of opinion may arise on this question from conflicting adjudications in some of the state courts, in this court it is settled in favor of the right of the corporation to plead its want of power, that is to say, to assert the nullity of an act which is an *ultra vires* act."

In *Central Transp. Co.* v. *Pullman's Palace Car Co.,* 139 U. S. 24, 60 (35 L. Ed. 55, 11 Sup. Ct. Rep. 478), we find this language:

"A contract of a corporation, which is *ultra vires,* in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful con-

tract any validity, or be the foundation of any right of action upon it."

In *McCormick* v. *Market Nat. Bank,* 165 U. S. 538 (41 L. Ed. 817, 17 Sup. Ct. Rep. 433), these words are used:

"The doctrine of *ultra vires,* by which a contract made by a corporation beyond the scope of its corporate powers, is unlawful and void, and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: the obligation of anyone contracting with a corporation, to take notice of the legal limits of its powers; the interest of its stockholders, not to be subject to risks which they have never undertaken; and, above all, the interest of the public, that the corporation shall not transcend the powers conferred upon it by law."

We conclude that the complaint herein does not state facts sufficient to constitute a cause of action, and the judgment is therefore affirmed.          AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE HARRIS concur.