CITY NAT. BANK OF WELLINGTON v. MORGAN. (No. 2241.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 16, 1924. Rehearing Denied Feb. 27, 1924.)

1. **Banks and banking** ⬅260(4)—National bank without power to guarantee loans to third parties.

Under Rev. St. U. S. § 5136 (U. S. Comp. St. § 9661), a national bank is without power to make an agreement with a depositor that the bank will guarantee payment of loans by depositor to third parties made through an officer of the bank.

2. **Banks and banking** ⬅99—State bank has no larger powers than national bank as to lending money for third persons.

Under Rev. St. art. 376, a state bank has no larger powers in respect to the lending of money for third persons and guaranteeing the loans than a national bank.

3. **Banks and banking** ⬅90—Bank liable for loan of depositor's money by officer to third parties for its benefit.

Where an officer of a bank agreed to loan depositor's money to third parties for depositor and he loaned the money to an insolvent debtor owing money to the bank and the bank accepted the proceeds in payment of the debt, the bank might be held liable to depositor, notwithstanding the bank had no knowledge of the breach of trust except through the officer making the loan.

4. **Principal and agent** ⬅162—Third party participating in agent's fraud liable to principal.

A third person who knowingly participates with an agent in the commission of a fraud upon the principal is liable with the agent for the consequent damages.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Banks and banking ⬡═226—Complaint held insufficient to sustain recovery based on theory of participation in cashier's breach of duty as agent of depositor.**

The complaint, in an action against a bank for negligently loaning plaintiff's money, based on the theory of a breach of an agency or guaranty contract, *held* insufficient to sustain a recovery based on the theory of participation in its cashier's breach of duty as agent of the depositor.

**6. Principal and agent ⬡═62(2)—Duty of agent lending money for others outlined.**

It is the duty of an agent lending money for others to act in good faith and exercise ordinary care to lend the money to responsible parties on proper security, if security would under the circumstances be necessary to make the loan reasonably safe.

**7. Principal and agent ⬡═62(2)—Loan by agent of principal's money to insolvent person held practically conclusive evidence of fraud.**

A loan by an agent of his principal's money to a person known to be insolvent is practically conclusive evidence of agent's fraud, but solvency of borrower would not be conclusive evidence that agent had discharged his duty.

On Motion for Rehearing.

**8. Appeal and error ⬡═930(3)—In action against bank, erroneous instruction and failure to submit issues required reversal.**

In an action against a bank, in which liability depended upon fraud or bad faith, where the trial judge failed to submit those issues but proceeded on the theory that they were to be determined by ascertaining whether the person to whom plaintiff's money was loaned was within the bank's knowledge insolvent at the time of the loan, and the court erred in submitting the issue of insolvency, *held*, that a judgment for plaintiff must be reversed; it not being presumed that the court found fraud.

**9. Appeal and error ⬡═930(3)—Ordinarily issue not submitted to jury presumed found in such a way as to sustain judgment.**

Ordinarily, when an issue made by the pleadings and evidence is not submitted to the jury, it will be presumed that the court found on it in such a way as to sustain the judgment.

Appeal from District Court, Collingsworth County; J. V. Leak, Judge.

Action by G. R. Morgan against the City National Bank of Wellington. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, and R. H. Templeton and C. C. Small, both of Wellington, for appellant.

Cocke & Gribble, of Wellington, and E. E. Diggs, of Childress, for appellee.

BOYCE, J. G. R. Morgan brought this suit against the City National Bank in Wellington, Tex. He alleged that the bank, in consideration of his doing his banking business with it, agreed to make loans for him of any money which he might from time to time desire to put out at interest and to guarantee the payment of such loans; that acting under the contract the bank made a loan of $3,000 of plaintiff's money to one J. L. Brooks, doing business under the name of the Brooks Grain Company; that Brooks was at the time insolvent and was indebted to the bank; that the bank knew of such insolvency and made the loan without security, applying the proceeds thereof to Brooks' indebtedness to it. The prayer was for recovery of the amount of said loan or in the alternative for such part thereof as was received by the bank and applied to its own use and benefit. The bank denied making the contract and pleaded that, if made, it was ultra vires and void. It further answered that if its cashier made the loan for plaintiff, he was acting in his individual capacity, under instructions from the plaintiff; that plaintiff, with full knowledge of Brooks' financial responsibility accepted the loan and afterwards renewed it without objection. In a supplemental petition plaintiff pleaded that the bank had received the benefits of the contract and was estopped from denying its validity.

In answer to special issues submitted to it, the jury found: (1) That an officer of the bank agreed "with G. R. Morgan to loan his money and have the same forthcoming when due"; (2) that such agreement was made by such officer in his "individual capacity"; (3) that the consideration for such agreement "flowing to the bank" was "in a business way"; (4, 5, and 7) that E. L. Koger (who was cashier of the bank at the time the loan was made and who made the loan for plaintiff) was acting as "an officer of the bank" in making the loan and "handled the plaintiff's money in making the loan in the same manner as he handled the bank's money"; (6) that the bank, directly or indirectly, received a benefit from the loan; (8 and 9) that Brooks was at the time the loan was made insolvent, and such condition was known to the officers of the bank; (10 and special) that the loan was not made by Morgan and Koger, acting together, and that Morgan did not with knowledge of all the material facts, ratify the loan.

The effect of these findings will be better understood when considered in connection with the following statement: Several years before the loan in controversy one Creath, who was at that time cashier of the bank, agreed with Morgan, as an inducement to secure Morgan's banking business, to lend such money as Morgan might wish to invest in this way. Plaintiff's testimony was to the effect that Creath was acting for the bank in making the agreement, while Creath testified

that he informed plaintiff that the bank could not make such agreement and that the agreement was made with him individually. Plaintiff also testified that it was agreed that the bank would have the money forthcoming at maturity of any notes that might be taken. Creath acting for himself or the bank, did make several loans for the plaintiff under this arrangement. When the plaintiff desired to lend any of his money, he notified Creath who would arrange the loan, take notes therefor, and draw against plaintiff's account with the bank, signing plaintiff's name by him. The notes were also kept in the bank and collections made by Creath or the bank. Creath was succeeded by Koger and the same arrangement continued. In May, 1920, Koger made a loan of $3,000 to J. L. Brooks, doing business as the Brooks Grain Company, taking Brooks' note for the amount of the loan, payable in one year. At maturity of the note the interest was paid, and Koger accepted for Morgan a renewal note, payable January 1, 1922.

Brooks was engaged in buying and selling grain, cotton, and cotton seed. At the time of the execution of this note he was indebted to various parties in the aggregate sum of about $14,000. The evidence as to the value of cotton, grain etc., he had on hand at that time is not definite. He owned real estate that was probably of about the value of the indebtedness owed by him, but part at least of this was exempt. As a part of the aggregate of the indebtedness mentioned, Brooks was indebted to the bank for $6,000, represented by a note, and an overdraft amounting to about $1,000 on that date. The $3,000 secured by the note to Morgan was placed to Brooks' credit in the bank, and at the close of business of that day his balance was about $2,000. Brooks' open account with the bank prior to and after May 10, 1920, fluctuated largely from day to day. At times he would have considerable balance to his credit; at other times, a large overdraft. From April 24 until May 10, 1920, the date of the Morgan loan, he had an overdraft in the bank, ranging from about $5,500 down to about $45. From May 10th to May 20th, he had a credit balance varying from $500 down to $154, but the overdraft soon reappeared and continued. Brooks continued in business, and his indebtedness to the bank increased. At the time the Morgan loan was made, the bank had no security for its own loan, except that it was understood that Brooks would handle all of his purchases and sales through the bank. In the summer of 1920, prices of cotton, grain, etc. went down, and sometime during the latter part of that year the bank took a bill of sale to all the personal property owned by Brooks and a deed of trust on his real estate to secure its own indebtedness, omitting any precaution to secure the Morgan note which it held for him. Brooks continued to handle the business under an agreement to handle it for the bank. The business was finally closed out in 1921 and 1922, leaving Brooks insolvent.

The judgment was for plaintiff for the sum of $3,000, with interest at 6 per cent. from January 1, 1922.

[1] The bank was, we believe, without power under the law to enter into the agreement alleged by plaintiff. U. S. Revised Statutes, § 5136; U S. Compiled Statutes, § 9661; City Nat. Bank v. Martin, 70 Tex. 643, 8 S. W. 508, 8 Am. St. Rep. 632 (the point does not appear in the syllabus); Holmes v. Uvalde Nat. Bank (Tex. Civ. App.) 222 S. W. 640; Pollock v. Lumbermen's Nat. Bank, 86 Or. 324, 168 Pac. 616, L. R. A. 1918B, 402: Grow v. Cockrill, 63 Ark. 418, 39, S. W. 60, 36 L. R. A. 89. There are other authorities which tend to a contrary conclusion. Squires v. First Nat. Bank, 59 Ill. App. 134; Clinton Nat. Bank v. National Park Bank, 37 App. Div. 601, 56 N. Y. Supp. 244; Id., 165 N. Y. 629, 59 N. E. 1120; Michie's Banks & Banking, vol. 2, p. 1628, 5 Cyc. 524. It may be that the question was not so presented by the facts in the two Texas cases cited as that those dicisions furnish a controlling authority. However, we think they announce the correct rule. See, for a general discussion of the rules to be followed in determining the extent of corporate powers. Northside Railway v. Worthington, 88 Tex. 562, 30 S. W. 1055, 53 Am. St. Rep. 778.

[2] The pleadings and the evidence show that during the time that plaintiff had this agreement with the bank, or its cashier, as the case may be, several changes were made in the organization of the bank; it was first a national bank, then a state bank, then a national bank again. We do not go into the details of these changes, as no point is made on them, the successive corporations succeeding to the rights and liabilities of its predecessor, and we take 'it that a state bank would have no larger powers in respect to the lending of money for third persons than a national bank. Revised Statutes, art. 376. We conclude, therefore, that the contract alleged was ultra vires.

It has been broadly stated, in a number of cases decided by the courts of this state, that where the corporation has received the benefits of the contract it is estopped from pleading that such contract was ultra vires, even though the corporation was wholly without power to make it. Kincheloe Irrigating Co. v. Hahn Bros. & Co., 105 Tex. 231, 146 S. W. 1189; Bay City Bank & Trust Co. v. Rice-Stix Dry Goods Co. (Tex. Civ. App.) 195 S. W. 344, and authorities cited in those cases. Some other decisions seem to indicate a disposition to approve the decisions of the Supreme Court of the United States which hold that a corporation may not be

bound by estoppel on a contract that is ultra vires in the sense that it is wholly without the scope of its corporate powers. Gaston & Ayres v. J. I. Campbell Co., 104 Tex. 576, 140 S. W. 772, 141 S. W. 515; Fidelity & Deposit Company v. National Bank of Commerce, 48 Tex. Civ. App. 301, 106 S. W. 782. See, in this connection, Fletcher's Enc. of Corp. § 1536 et seq. In this case the bank, if it made the agreement with Morgan, was not to receive any direct benefit under the contract. Its compensation for making the loans was indirect only—the securing of plaintiff's business and possible enlargement of its own business by having more funds for the accommodation of its customers; this is much the same character of advantage that would result from a voluntary guaranty contract in many instances, in which the application of the doctrine of estoppel has been denied. Fidelity & Deposit Co. v. Bank, supra; Citizens' Nat. Bank v. Good Roads Gravel Co. (Tex. Civ. App.) 236 S. W. 161; Fletcher's Enc. of Corporations, § 1546.

[3] So we doubt whether the bank can be held on the theory of estoppel to liability on the contract itself. But we do believe that the bank, on the case made by plaintiff's pleading, might be held liable, independent of any liability on the contract properly speaking, for its fraudulent dealing with plaintiff's funds intrusted to it. If the bank had appropriated this money to its own use, it would, of course, be liable for conversion. On the same principle when it used the power which the contract gave it over plaintiff's funds, to make a loan which, if the facts alleged by plaintiff be true, it knew to be in violation of its duty to plaintiff and of his rights, for the purpose of shifting its own bad debt to plaintiff, it thereby committed a fraud on the plaintiff. Under the guise of making a loan under the contract, it appropriated fraudulently plaintiff's money to its own use. Such a fraud, if committed, was such a wrong, independent of the contract, as would afford the plaintiff a cause of action for the damages resulting therefrom. The jury found, however, that the plaintiff had no contract with the bank, but that its contract was with Koger in his individual capacity. And even if recovery is to be allowed on the theory of fraud, yet the allegation of the contract is such an essential element of the fraud pleaded that we doubt whether the judgment, under the verdict of the jury, can be sustained on the theory under discussion. We reverse the case, however, for another reason.

[4] Even though the contract for the lending of the money was the individual contract of Koger, yet the bank might, under some circumstances, be liable. A third person, who knowingly participates with an agent in the commission of a fraud upon the principal, is liable with the agent for the conse-

quent damage. Duckett v. National Mechanics Bank, 86 Md. 400, 38 Atl. 983, 39 L. R. A. 86, 63 Am. St. Rep. 513; Perry v. Oerman, 63 W. Va. 566, 60 S. E. 604, 15 L. R. A. (N. S.) 310, 129 Am. St. Rep. 1020; Brookhouse v. Union Publishing Co., 73 N. H. 368, 62 Atl. 219, 2 L. R. A. (N. S.) 993, 111 Am. St. Rep. 623, 6 Ann. Cas. 675; Mechem on Agency (2d Ed.) § 2137. If it be true that Koger, as plaintiff's agent for the loan of the money, acted in bad faith toward him, lending the money to a person known to him to be insolvent, for the purpose of securing the payment of such insolvent's debt to the bank, then we think the bank might, under proper allegations, be responsible to plaintiff. The appellant contends that the bank would not be liable in such case because it had no knowledge, except through Koger, of the breach of trust and that Koger's knowledge could not be imputed to it. With this contention we cannot agree. We refer to a few of the numerous authorities that might be cited in this connection: Atlantic Cotton Mills v. Indian Orchards Mills, 147 Mass. 268, 17 N. E. 496, 9 Am. St. Rep. 698; Holden v. New York & Erie Bank, 72 N. Y. 286; Brookhouse v. Union Publishing Co., 73 N. H. 368, 62 Atl. 219, 2 L. R. A. (N. S.) 994 and notes, 111 Am. St. Rep. 623, 6 Ann. Cas. 675; Potter v. Mobley (Tex. Civ. App.) 194 S. W. 208 (11) and authorities there cited; Mechem on Agency (2d Ed.) § 1813 et seq. Mr. Mechem in an elaborate discussion of the law applicable to questions of this character, states this conclusion:

"The law imputes to the principal and charges him with all notice or knowledge relating to the subject-matter of the agency, which the agent acquires or obtains while acting as such agent and within the scope of his authority, or, according to the weight of authority, which he may previously have acquired and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it. Provided, however, that such notice or knowledge will not be imputed: (1) Where it is such as it is the agent's duty not to disclose; (2) where the agent's relations to the subject-matter are so adverse as to practically destroy the relation of agent; (3) where the person claiming the benefit of the notice or those whom he represents' colluded with the agent to cheat or defraud the principal." Mechem on Agency, § 1813, p. 1397.

[5] In this case it does not appear that Koger had any individual interest adverse to that of the bank. On the contrary, according to plaintiff's case, his breach of duty was committed for the benefit of the bank itself. This fact distinguishes the case from cases such as Amarillo Nat. Bank v. Harrell (Tex. Civ. App.) 159 S. W. 858, and others cited by appellant. We believe, however, that the pleading is not sufficient to sustain judgment on this theory of liability. While it is alleged that the loan was made with knowl-

edge of insolvency of the borrower Brooks and for the purpose of benefit to the bank, all of these allegations were made in connection with the charge that the bank made the loan under its agency contract with the plaintiff and that its liability was under its own contract, either by way of guaranty of payment of the note or for bad faith, and negligence in the performance of its own contract. There is no allegation of liability because of participation by the bank in the treachery of Koger as plaintiff's agent.

[6, 7] But if the judgment might be sustained on any of the theories discussed, still we think we would be required to reverse the case on the assignment complaining of error in the court's definition of insolvency. The definition given, which we need not here quote, was clearly erroneous. Posey v. McManis, 28 Tex. Civ. App. 452, 67 S. W. 792; Owens v. American Nat. Bank, 36 Tex. Civ. App. 490, 81 S. W. 988. We should say here that the question of Brooks' insolvency was not necessarily a controlling ultimate fact. It is the duty of an agent lending money for another to act in good faith in the transaction of such business and to exercise ordinary care to lend the money to responsible parties and on proper security in addition to the individual responsibility of the borrower if security would, under the circumstances, be necessary to make the loan a reasonably safe one. Mechem on Agency, § 1295. An agent failing in this duty is responsible for loss caused by such failure. Of course, if the loan is made to a person known to be insolvent, that fact would be practically conclusive evidence of the agent's fraud. But the solvency of the borrower would not be conclusive evidence, always, that the agent had discharged his duty in the matter. But since the court evidently considered the answer to the question of Brooks' insolvency as determinative of the liability of the defendant, we cannot assume that the judgment was based on some other conclusion of fact, and so avoid reversal because of the error in the submission of the issue of insolvency.

The evidence as to admissions made by the assistant cashier in the conversation testified to by plaintiff was not, in our opinion, admissible. Farmers, M. & E. Co. v. Hodges (Tex. Civ. App) 248 S. W. 76.

Reversed and remanded.

## On Motion for Rehearing.

Evidently the former opinion has not made our meaning clear to appellee's attorneys. We say this, not in criticism of appellee's motion for rehearing, for the writer is prepared to admit that the discussion of the reasons for reversal of the case on account of the error in the submission of the issue of Brooks' insolvency was not sufficiently full, perhaps, to clearly indicate the process of reasoning on which that result was reached. The law of the case, we think, is sufficiently and correctly stated in the opinion, and we will not re-enter upon a discussion of it. We will, however, briefly restate, in a somewhat different form, our reasons for concluding that the judgment must be reversed on the ground originally stated.

The judgment cannot be affirmed on the theory that the bank agreed to lend plaintiff's money and be responsible for its return, for two reasons: (1) The jury found, in response to the second issue, that plaintiff's contract was with the bank's cashier, "in his individual capacity." There was therefore, no contract with the bank. If this finding cannot be given its full effect, because of conflict with other findings, no judgment could be rendered on such other conflicting findings. (2) Even if such a contract had been made with the bank, it would have been, in our opinion, ultra vires and furnished no basis of recovery on the contract itself.

[8, 9] If these conclusions are correct it follows that the bank would only be liable for damages resulting from its fraud or bad faith in the transaction either by participation in the breach of trust of plaintiff's agent, or, if it should be held that the bank itself and not the cashier individually was plaintiff's agent, in its own handling of the funds intrusted to it. But the court submitted no such issue to the jury and there was no direct jury finding on it. Ordinarily, when an issue made by the pleading and evidence is not submitted to the jury, it will be presumed that the court found on it in such way as to sustain the judgment. But in this case the court was evidently proceeding on the theory that the question of fraud or bad faith was to be determined by ascertaining whether Brooks was, within the bank's knowledge, insolvent at the time the loan was made to him—in fact, the plaintiff pleaded his case in that way, and, of course, such facts are very important in determining the ultimate issue of fraud or bad faith, and, on the finding that Brooks was insolvent within the cashier's knowledge, the conclusion of fraud would follow inevitably. It would be doing violence to the record to say that the court made a finding of fraud, independent of and not based on the jury's finding on the issue of insolvency submitted. Therefore the error in the charge of the court in the submission of the issue of insolvency leaves no finding of fact, free from error in the manner of its submission, on which the judgment can be based.

The motion will be overruled.