## YARBOROUGH et al. v. FULTON et al.
### No. 3103.

Court of Civil Appeals of Texas. El Paso.
Jan. 3, 1935.

Rehearing Denied Jan. 31, 1935.

Cofer & Cofer, of Austin, and Murphy & Murphy, of Gainesville, for appellants.

J. W. Hassell, Jr., of Dallas, and Webb & Webb, of Sherman (J. W. Hassell, of Dallas, of counsel), for appellee R. S. Fulton.

Head, Dillard, Maxey-Freeman & McReynolds, of Sherman, for appellee Merchants' Bank.

PELPHREY, Justice.

Mrs. M. M. Yarborough and her daughter, Mrs. Lillie Y. Cunningham, resided at Sherman, Grayson county, Tex., all their lives, were stockholders in the Merchants' & Planters' National Bank of that city, and were well acquainted with its officers. Both of these ladies were widows in the year 1924, and at that time had money in the sum of $30,000 loaned to W. H. Gross and V. A. Dow of Palo Pinto county, Tex., $25,000 to Gross, and $5,000 to Dow. These loans were bearing 8 per cent. interest, and payments were being made promptly. Gross having an option to pay his note before maturity notified appellants, who were then residing temporarily in El Paso, Tex., that he would exercise such option and retire his loan on January 1, 1925, unless appellants would reduce the rate of interest to 6 per cent. This they declined to do, and began immediately endeavoring to loan the money to others when it would be paid. At that time R. S. Fulton was indebted to them in the sum of $8,750, and in June, 1924, they wrote Fulton advising him that they would have some money to reloan after January and hoping that he could take it. August 1, 1924, they again wrote Fulton calling his attention to the amount of their loan to him and asking him if he would like to raise the amount to $10,000 or $15,000. They also wrote to the Merchants' & Planters' National Bank, attention of Mr. Dorchester, its president, in June, advising him that they would have $30,000 on January 1, 1925, and inquiring of him as to whether he could reloan it for them. Mr. Dorchester in reply informed them that he knew of no desirable loans where the parties would pay 8 per cent. and that there was plenty of cheap money and no one wanting to borrow. About December 1, 1934, they talked with Mr. Dorchester at the bank in Sherman and, according to their version of the conversation, told him again that their money was going to be paid in, and that he said he was going to Denison, Tex., to attend a bar association dinner and he would see if he (Fulton) would take the money, and that he would be the best man and the best security they could get. At a later date, appellants assert that Dorchester told them Fulton would take the money; that he was a reliable dependable man; that the bank had let him have money; that the security he had was first liens upon real estate; that Fulton, being a trader, did not want to place the notes on record; that he would give them abstracts; that he wanted to reserve the right of substitution; and that such a deal was all right.

On December 6, 1924, Dorchester wrote Fulton the following:

"Yours of the 3rd instant received, and I note arrangements which you have made with Mrs. Yarborough in regard to her money. She was in yesterday and told me about it. Now I will be very glad to look after the matter in the way you suggest.

"Yes, eight percent is a little high right at this time, but getting it in the shape you are getting it in, and for the time you are, it is probably better for you to handle it in this way, than to be owing so many people.

"Now, Scott, what I want you to do is to always have ample security to protect her. You know she is a woman and if anything should go wrong I will get the blame for it."

On January 3, 1925, appellants and Fulton met in the Merchants' & Planters' National Bank and there consummated the loan. Fulton executed a note for $35,000 payable to appellants on January 3, 1930, and appellants gave Fulton a check for $26,068.54, being the balance after his then indebtedness to them was deducted. Fulton, at the time of this transaction, had a list of collateral notes amounting to $35,705, which were pledged as security for the note which he executed. At the time the deal was closed, Fulton drew a check for $10,000 in favor of the Merchants' & Planters' National Bank to cover his indebtedness to it. The note and the collateral were all left with the Merchants' & Planters' National Bank until January 26, 1925, when they were withdrawn and placed in the First National Bank at Gainesville, Tex. At the time of their withdrawal, appellants executed a receipt for them. On March 12, 1927, appellant gave Fulton permission to substitute two $3,500 notes for three other notes. Fulton paid the interest on the note as it accrued during the years 1926, 1927, and 1928, but failed to pay it promptly in 1929. During the summer of 1929 appellants employed a lawyer to look into the security on the note and its value. This he did in conjunction with an abstractor. Their attorney, after such investigation reported that their security was gone, and they then began negotiations with Fulton. Thereafter he (Fulton) executed two new notes, dated December 10, 1929, payable one and two years from date. The first note was for $3,198 and the second for $35,000. These notes not being paid, the trustee in the deed of trust gave notice and sold the property therein described. Appellants were the purchasers at such sale and bought in the land

for $1,000. On the 14th day of November, 1931, appellants filed suit against Fulton on the two notes above described, and on September 15, 1932, filed their first amended petition upon which the case was tried. In this amended petition Merchants' & Planters' National Bank was for the first time made a party defendant, appellants seeking a rescission, cancellation, and annulment of the original transaction because of the payment by Fulton to the Merchants' & Planters' National Bank of the $10,000 and the alleged concealment of such payment from them until during the year 1932. They tendered a return of the note executed by Fulton and the collateral notes, and sought judgment against the bank for the sum of $10,000 and against Fulton for the sum of $16,068.54, or, in the alternative, for a judgment against each of the defendants for the amount shown to be due by them.

At the conclusion of the testimony, the jury was instructed to bring in a verdict for the appellees, and, from a judgment based on such instructed verdict that appellants take nothing, this appeal has been perfected.

### Opinion.

As to the liability of the bank, appellants present the following claims in their brief: (1) That the bank was the agent of appellants in the loaning of their money to Fulton, and benefited secretly by the transaction in receiving $10,000 out of the money loaned to Fulton in payment of his debt to it; (2) that it is liable to appellants independently of any contract; (3) that, having received the benefits from the loan transaction, the bank cannot plead ultra vires; and (4) that it was negligent in accepting collateral notes secured by inferior lien and in closing the transaction in such a way as to enable Fulton to defraud appellants.

Appellees counter with the contention that appellants were not entitled to a rescission of the original transaction because they, with full knnowledge of the facts as to the value of the original collateral notes and the acts of the appellee Fulton relating thereto, voluntarily elected to accept and did accept new notes from Fulton, surrendered the original notes pledged by him as security, and accepted a deed of trust on other and different property, and that they thereafter caused their trustee under the latter deed of trust to sell said property, became the purchasers thereof, and then sued Fulton on said new notes.

In response to this contention, appellants claim that the fraud was not discovered by them until in May, 1932, and therefore the acceptance of the new notes and deed of trust could not work as an election by them. In appellant's amended petition after allegations as to substitutions made by Fulton with and without their consent and his other dealings with the collateral notes which rendered them worthless, there appears the following:

"That upon discovering these facts plaintiffs instituted an investigation and found and learned for the first time the facts as hereinbefore alleged. That furthermore plaintiffs learned that said notes so pledged and delivered to them as collateral, including the T. H. Massie and the Z. D. Emerson notes aggregating $10,000 so transferred as hereinbefore alleged by the defendant Merchants & Planters National Bank to plaintiffs, were not first lien notes upon the respectively described lands upon which they purported to be first lien, but that they and each and every one of them were second lien notes or else there was no lien attached to them at all, or else there was no transaction or record disclosing that said notes were secured by liens of any kind."

The attorney who made the investigation for appellants testified:

"With only one or two exceptions my investigation disclosed that the notes these ladies claimed to hold as collateral had been at one time secured by liens on real estate. I made no extensive or careful search to determine whether they had been first or second liens but in the course of my search I concluded that some of them at least were not first liens."

"As I have said I made no search for this particular purpose, and would have no independent recollection now, but from some pencil memorandums which I made at the time. I see that I concluded that the Schweighoefer note of $1,000.00 dated May 6, 1926, was inferior to a prior lien made by Schweighoefer to Douglas to secure $1,500.00 and that the (title and) plaintiffs lien had been merged in Fulton, subject to the Douglas lien. On the Atkins and Lewallen notes of $2,200.00 each, I concluded that First Texas Joint Stock Land Bank had a first lien on the land at the time I undertook to look it up. It appeared to me that J. C. Mulder notes were not first lien notes, and their liens had been merged into the title and subsequent liens made by Fulton to other parties. As to the other notes, it appears that I could either find nothing or found that the liens had been merged, lost, or released by Fulton and my notes do not show whether they had been

first or second lien when pledged to these ladies."

It thus appears that appellants had knowledge prior to December 10, 1929, of the fact that some of the notes that Fulton had put up as collateral were not first lien notes. Therefore their action in accepting new notes and new security constituted an election not to seek a rescission of the original transaction.

As to the question of the payment of Fulton's debt to the bank out of the loan we find a different state of facts. There is nothing in the record here indicating that appellants had any knowledge of such fact before May, 1932, and it cannot be said that as to such fact there was any election.

■■ The primary question upon which depends a correct disposition of this appeal is whether the bank was the agent of appellants in the making of the loan or whether there is sufficient evidence to raise an issue of fact as to such agency.

June 23, 1924, Mrs. Yarborough wrote the bank asking if the bank thought it could re-loan their money for her; Mr. Dorchester replied to that letter officially, signing it as president, telling them that he did not just then know of a desirable loan where the parties would pay 8 per cent., but that he would bear it in mind, and that possibly they would hear of something. In December, 1924, appellant discussed the loaning of their money with Mr. Dorchester, personally. He told them he would see Fulton about taking the money, which he did. A few days later Dorchester reported to appellants that Fulton would take the money. On December 6, 1924, Dorchester wrote to Fulton telling him that he wanted him to have ample security to protect Mrs. Yarborough, for if anything went wrong he (Dorchester) would get the blame for it. The loan was consummated in a committee room of the bank, and one of the bank employees upon direction of Dorchester assisted; and Dorchester explained to appellants why Fulton did not want to record the transfers of the notes and wanted to reserve the right of substitution.

Where the facts as to agency are such that there may fairly be a difference of opinion as to whether an agency exists or not, the question is for a jury. Mechem on Agency, § 296, p. 214.

The above facts are, we think, sufficient to raise a jury question, and, if the other elements of recovery be sustained, then the trial court improperly instructed a verdict.

We next come to the question as to the sufficiency of the evidence to raise an issue as to the bank's liability to appellants on the theory of the receipt of the $10,000 payment on its loan to Fulton.

There is no dispute as to the bank receiving such amount out of the money loaned to Fulton by appellants. Appellants did not know of such payment, and from Dorchester's letter of December 6, 1924, it appears that he knew, at least the statements in such letter would raise a question as to his knowledge, that Fulton's indebtedness to the bank was to be paid from the proceeds of the loan.

■ Under the rule that an agent is liable to his principal for any interest acquired adverse to the principal without a full disclosure, the evidence, we think, raises issues as to the liability of the bank in so far as the item of $10,000 is concerned. 21 R. C. L. § 10, p. 826; United States v. Carter, 217 U. S. 286, 30 S. Ct. 515, 54 L. Ed. 769, 19 Ann. Cas. 594; City Nat. Bank v. Morgan (Tex. Civ. App.) 258 S. W. 572.

■ We find no error in the exclusion of the Gross deed of trust. Appellants' rights here do not depend upon whether or not their money was well secured prior to the loan to Fulton.

■ In view of another trial, we are of the opinion that all evidence tending to establish the agency of the bank should be admitted. 21 R. C. L. § 6, p. 820, and that all evidence showing or tending to show that appellants would not have made the original loan except for the fraud practiced upon them should be admitted.

■ It is also true that one who enters the employ of another impliedly agrees that he has a reasonable amount of skill in the work to be done, and, in case of damage to the employer arising from his unskillfulness or negligence, he is liable.

■ If the facts here are sufficient to show that the bank was the agent of appellant and as such agent failed to exercise reasonable care, skill, and judgment in arranging the loan of appellants' money, then the bank would be liable to them for any loss which they may have sustained.

Believing the trial court to have been in error in instructing a verdict in favor of appellees, the judgment is reversed, and the cause remanded.